FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 0 3 2010 ★

BROOKLYN OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

DANIEL B. YAHRAES, KYLE HANAGARNE
AND ELLIE HANAGARNE, on behalf of
themselves and all others similarly situated,

                               Plaintiffs,

   - against -

RESTAURANT ASSOCIATES EVENTS
CORP., RA TENNIS CORPORATION, LEVY
RESTAURANTS, INC., AMERIVENTS,
SCOTT FRAIN, JAMES DELLA PACE and
JKDELLA SALES DIMENSIONS, INC.,

                               Defendants.

---

Civil Action No. _____

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

**Jury Trial Demanded**

CV 10 - 0935

GOLD, M.

---

      Plaintiffs Daniel Yahraes, Kyle Hanagarne and Ellie Hanagarne ("Plaintiffs"),

individually and on behalf of all others similarly situated, through their undersigned

attorneys, for their Class and Collective Action Complaint against Defendants Restaurant

Associates Events Corp., RA Tennis Corporation, Levy Restaurants, Inc., Amerivents,

Scott Frain, James Della Pace, and JKDella Sales Dimensions Inc., (collectively, the

"Defendants") allege, upon information and belief, except as to the allegations that

pertain to Plaintiffs which are based upon personal knowledge, as follows:

**NATURE OF THE ACTION**

     1.    This class action arises out of Defendants' pervasive and repeated

disregard of federal and New York State labor laws during the course of Plaintiff's

employment as a Luxury Suite Attendant ("suite attendant") at the U.S. Tennis Open (the

"U.S. Open" or the "Open").  Plaintiffs bring this action pursuant to the federal Fair

Labor Standards Act (the "FLSA"), 29 U.S.C. 201, *et seq.*, the New York Labor Law (the

"NYLL"), and common law for Defendants' misclassification of suite attendants, failure to pay all wages due including overtime, unlawful retention of gratuities, improper wage deductions, spread of hours pay violations, and violations of recordkeeping and posting requirements. Plaintiffs seek damages on their own behalf and on behalf of all others similarly situated and injunctive relief to ensure that the pervasive pattern of alleged wrongs does not recur unchecked in future years.

2.      The U.S. Open, presented by the United States Tennis Association ("USTA"), is, in the USTA's words, "a two-week sports and entertainment extravaganza," and takes place annually over the course of two weeks in late August through early September at the Billie Jean King National Tennis Center in Queens, New York (the "Tennis Center"). Founded in 1881 as an entertainment diversion for high society, the U.S. Open has evolved into an event that, in 2008, drew a crowd of 720,227 people over 26 sessions of tennis.

3.      Food and food service is a big business at the U.S. Open. In an October 2007 interview with *St. Louis Magazine*, Larry Levy, Chairman of Levy Restaurants ("Levy"), one of the defendants in this action, said the U.S. Open is "the biggest tennis event in the world—$15 million in sales in 14 days."

4.      Fans at the U.S. Open can choose from seven on-sight restaurants, stop by the concessions area outside the stadium, or visit the "Food Village," where they can choose from many name-brand eateries like New York's Carnegie Deli. According to the *Daily News*, Levy runs "five real, sit-down restaurants that accept reservations - a steakhouse, clubhouse, cafe, seafood restaurant and a Cuban bistro - plus 59 high-end concession stands, 100 luxury suites, the president's box, cafeterias for umpires,

2

journalists and trainers, and the Players Club, where the best-selling Cobb Salad is tossed

for [tennis stars] Serena [Williams] and Maria [Sharapova]."

5.      The U.S. Open is a boon to New York City's economy, drawing tourists

from all over the world to New York City, and it is touted as an event that provides the

residents of New York City with employment opportunities.   A July 16, 2009 press

release by Amerivents, one of the defendants in this action, describes the purported

benefits of the jobs provided by the Open:

> The Queens Borough President's Office and Amerivents Event Staffing
> and Management are working together to staff 700 concession jobs in
> Queens during the 2009 U.S. Open Tennis Championships. Through the
> initiative, Amerivents is looking for Queens residents to fill positions
> including concession stand managers, cashiers, cooks and line servers. The
> U.S. Tennis Open will take place in Flushing from August 31 until
> September 13. Jobs are available from August 25, to cover qualifying
> tournaments and Arthur Ashe Kids' Day.
>
> "The jobs created by the 2009 US Tennis Open will provide critical
> support to many residents who need to make it through these tough
> economic times," said Queens Borough President Helen Marshall. "That is
> why I have partnered with Amerivents to invite borough residents to apply
> for these jobs right here in Queens in a world-class venue."
>
> *       *       *
>
> "We have always been proud here in Queens to be the host of the U.S.
> Tennis Championships," said [then] councilmember John Liu, City
> Council District 20. "It's great that they are making this effort to build
> stronger ties with the community, and there cannot be any better way to
> strengthen those ties than to hire people from the local community. This
> could not have come at a better time such as now when the economy is
> weak and many people are unfortunately out of work."

6.      The U.S. Open's image as a boon to the local community particularly in a

bad economy masks defendants' persistent and pervasive violations of federal and state

labor laws.  Under the management of the defendants herein and for at least the past six

years, employees have not been paid in compliance with applicable federal and state law.

3

Employees are fearful of asserting their rights lest they be "blacklisted" from working at future U.S. Open tournaments.

7.      During the relevant period, Plaintiffs and others similarly situated have been misclassified as "independent contractors," have had improper deductions made from their pay in consequence of such classification and/or have been deprived of overtime pay.  Even in 2009 when Plaintiffs and others similarly situated were properly classified as hourly employees, defendants failed to properly compensate them in accordance with applicable federal and state law and failed to pay overtime as required by federal and state law.  In addition, defendants illegally retained earned gratuities, in the form of service charges and in violation of NY Labor Law §196-d.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction pursuant to 28 U.S.C. §§1331 and Section 216(b) of the FLSA, 29 U.S.C. §216(b).  Plaintiffs' state law claims are interposed in accordance with the Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367.

9.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2), as the unlawful practices complained of occurred at the Tennis Center which is located within the Eastern District of New York.

## THE PARTIES

**The Plaintiffs**

10.      Plaintiff Daniel Yahraes is a resident of Queens, New York.  Yahraes has been employed as a suite attendant in one of the approximately 90 corporate/luxury suites at Arthur Ashe Stadium every year starting at the 2000 Open.  Plaintiff was responsible

4

for setting up a food buffet, keeping the suite clean, providing services to patrons of the suite and acting as a liaison to the host of the suite.

11.    Plaintiff Kyle Hanagarne is a resident of Provo, Utah.  He has been employed as a suite attendant in one of the approximately 90 corporate/luxury suites at Arthur Ashe Stadium every year starting at the 2007 Open.  He was responsible for setting up a food buffet, keeping the suite clean, providing services to patrons of the suite and acting as a liaison to the host of the suite.

12.    Plaintiff Ellie Hanagarne is a resident of Provo, Utah.  She has been employed as a suite attendant in one of the approximately 90 corporate/luxury suites at Arthur Ashe Stadium every year starting at the 2006 Open.  She was responsible for setting up a food buffet, keeping the suite clean, providing services to patrons of the suite and acting as a liaison to the host of the suite.

13.    Plaintiffs Daniel Yahraes, Kyle Hanagarne and Ellie Hanagarne are referred to collectively herein as "Plaintiffs").  Plaintiffs' consents to file suit are annexed to this complaint and filed herewith.

**The Defendants**

**Restaurant Associates**

14.    Defendant Restaurant Associates Events Corp. ("Restaurant Associates") is a New York corporation with its principal place of business at 330 Fifth Avenue, 5th Floor, New York, New York.  Restaurant Associates provided food service and staffed the food service at the U.S. Open for over a decade, from the mid-1990s through and including the 2005 U.S. Open.

5

15.     Defendant RA Tennis Corporation was at all time relevant a wholly owned subsidiary of Restaurant Associates. RA Tennis Corporation held the contract with USTA to provide the catering/concession services at the 2005 U.S. Open. Defendants RA Tennis Corporation and Restaurant Associates are collectively referred to hereinafter as "Restaurant Associates."

16.     In 2004, Restaurant Associates had responsibility for food services and staffing at the US Open. In 2005, Restaurant Associates shared responsibility for food services and staffing with defendant Levy Restaurants. In 2004 and 2005, Restaurant Associates was an employer and/or a joint employer of Plaintiffs and others similarly situated. Restaurant Associates had and exercised the authority to assign work, discipline workers, set work hours, set pay and set the dress code. Restaurant Associates depended upon the suite attendants as an integral part of its business at the Open. Restaurant Associates is wholly owned by Compass Group USA, Inc., a large management company with annual revenue in excess of $8 billion.

**Levy Restaurants**

17.     Defendant Levy Restaurants, Inc. ("Levy Restaurants") is an Illinois corporation with its principal place of business at 980 N. Michigan Avenue, Chicago, Illinois. Founded in 1978 as a single delicatessen in Chicago, Levy Restaurants has since expanded into a food service empire that "pioneered the concept of fine dining in stadiums and arenas." Levy Restaurants is also wholly owned by Compass Group USA, Inc.

18.     Levy Restaurants advertises itself as a specialized, industry-leading food organization with a network of internationally acclaimed restaurants (the Restaurant

6

Group); the leading market share of premium food service operations at sports and entertainment facilities (the Sports & Entertainment Group); as well as a full-service consulting and advisory services group. Levy Restaurants serves food in close to 100 locations, including restaurants, sports stadiums, arenas, convention centers, zoos, racetracks, and music festivals. Levy Restaurants has 15,000 employees. In 2006, Levy's revenues were $735 million.

19.    In 2005, Levy Restaurants shared responsibility for food service and staffing with defendant Restaurant Associates. In 2006, Levy Restaurants and the USTA announced a long-term agreement for Levy to provide foodservice at the U.S. Open tennis tournament, including all five restaurants, 59 concessions and 100 suites that feed the event's 700,000-plus attendees. Levy contracted some or all of the staffing for the 2006 Open to a company called Praxis (which was run by or controlled by defendants Frain and Della Pace), and for the 2007, 2008 and 2009 Open to defendant Amerivents.

20.    In 2005 through 2009, Levy Restaurants was an employer and/or a joint employer of Plaintiffs and others similarly situated. Levy had and exercised the authority to assign work, discipline employees, set work hours, set pay and set the dress code. Levy Restaurants depended upon the suite attendants as an integral part of its business.

**Amerivents**

21.    Amerivents is a partnership with its principal place of business at 250 West 57th Street, Suite 1432, New York, New York. Amerivents was founded in 2007 by defendants James Della Pace and Scott Frain. Amerivents provides event staffing and management services for sporting events, trade shows, fund raisers and other events. Amerivents has staffed various food services at the U.S. Open since 2007. During the

2007, 2008 and 2009 U.S. Open events, Amerivents was an employer and/or joint employer of Plaintiffs and all others similarly situated. Defendants Amerivents and JKDella Sales Dimensions, Inc., share a single federal employer identification number. Amerivents, through Messrs. Frain and Della Pace, hires the suite attendants, disciplines the suite attendants, sets attendance policies, exercises control over the suite attendants, requires them to wear uniforms, sets the hours suite attendants work, pays the suite attendants and depends on the suite workers' attendance as an integral part of its business.

**JKDELLA Sales Dimensions, Inc.**

22.     Defendant JKDella Sales Dimensions, Inc. ("JKDella") is a New York corporation with its principal place of business c/o Amerivents, 250 West 57th Street, Suite 1432, New York, New York. For the 2009 U.S. Open, JKDella was the employer and/or joint employer of Plaintiffs and the other suite attendants. JKDella and defendant Amerivents share a single federal employer identification number.

**Scott Frain**

23.     Defendant Scott Frain is an individual who resides in Long Island, New York. He is a Managing Partner of defendant Amerivents, and also holds himself out as the President and COO of Amerivents. During the 2006, 2007, 2008 and 2009 U.S. Open events, Mr. Frain was an employer and/or joint employer of Plaintiffs and others similarly situated. Mr. Frain hired the suite attendants, sent the suite attendants "credential applications" for the U.S. Open, set the rate of pay for the suite attendants, exercised control over the suite attendants' hours, and communicated the terms of employment to the suite attendants. Mr. Frain had and exercised the authority to hire,

8

fire, discipline, set work hours, set pay, set the dress code and to implement payroll policies affecting workplace conditions and employment. Mr. Frain depended upon the suite attendants as an integral part of his business.

**James Della Pace**

24. Defendant James Della Pace is an individual who resides in New York, New York. He is one of the Managing Partners of defendant Amerivents. During the 2006, 2007, 2008 and 2009 U.S. Open events, Mr. Della Pace was an employer and/or joint employer of Plaintiffs and others similarly situated. Mr. Della Pace had and exercised the authority to hire, fire, discipline, set work hours, set pay, set the dress code and to implement payroll policies affecting workplace conditions and employment. Mr. Della Pace depended upon the suite attendants as an integral part of his business.

25. Defendants Frain and Della Pace exercised sufficient control over the day-to-day operations of Amerivents and/or JKDella to be considered the employer of Plaintiffs and others similarly situated under the FLSA and the NYLL. Further, Defendants Frain and Della Pace are personally liable for the wages of Plaintiffs and others similarly situated under the New York Business Corporation Law §630.

## COLLECTIVE ALLEGATIONS

26. Plaintiffs bring the First, Second and Third Causes of Action as a collective action pursuant to Section 216(b) of the FLSA, 29 U.S.C. §216(b) on behalf of themselves and other similarly situated people (the "FLSA Collective Action Members"), which shall include:

> All persons who work or worked as Luxury Suite Attendants at the Arthur Ashe Stadium at the Tennis Center immediately prior to and during the 2007, 2008 and 2009 U.S. Open through the date the Court orders notice to be sent in accordance with Section 216(b) of the FLSA (the "FLSA

Class Period"). Excluded from the Class are the named defendants, any corporations, partnerships or other entities affiliated with them and any persons who are related by blood or marriage to the named defendants.

27.    Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs. There are likely hundreds of similarly situated current and former employees of Defendants who have been underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records that they are required to create and maintain under applicable federal and state law. Notice should be sent to the FSLA Collective Action Members pursuant to 29 U.S.C. §216(b).

## CLASS ACTION ALLEGATIONS

28.    Plaintiffs bring the Fourth through Eleventh claims as a class action pursuant to Rule 23 (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class (the "Rule 23 Class"), consisting of:

> All persons who work or worked as Luxury Suite Attendants at the Arthur Ashe Stadium at the National Tennis Center immediately prior to and during the 2004, 2005, 2006, 2007, 2008 and 2009 U.S. Open through the date the Court certifies the class (the "Rule 23 Class Period"). Excluded from the Class are the named defendants, any corporations, partnerships or other entities affiliated with them and any persons related by blood or marriage to the named defendants.

29.    The Rule 23 Class is so numerous that joinder of all members is impracticable. The exact number of the Rule 23 Class members is unknown to Plaintiffs at this time but it is believed to be hundreds of persons. The identity of the Rule 23 Class members is known to Defendants and is contained in the employment records that they are required to create and maintain as a matter of state and federal law.

30.     Plaintiffs' claims are typical of the claims of the other members of the Rule 23 Class as Plaintiffs and all other members of the Rule 23 Class sustained damages arising out of Defendants' conduct in violation of state laws as complained of herein. Plaintiffs will fairly and adequately protect the interests of the members of the Rule 23 Class and have retained counsel competent and experienced in complex class action litigation. The Rule 23 Class members work, or have worked, for Defendants as Luxury Suite Attendants at the U.S. Open; were improperly classified as "independent contractors" by Defendants during the U.S. Open events that took place in 2006-2008; were classified by Defendants as "employees" for the 2009 U.S. Open; enjoy the same statutory rights and protections under the NYLL; and have sustained similar types of damages as a result of Defendants' failure to comply with the NYLL and the supporting regulations.

31.     Plaintiffs have no interests that are contrary to or in conflict with those of the other members of the Rule 23 Class.

32.     Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

33.     Common questions of law and fact exist as to all members of the Rule 23 Class and predominate over any questions affecting solely individual members. Among the questions of law and fact common to the Rule 23 Class are:

a.     Whether the NYLL and the supporting regulations were violated by Defendants' acts as alleged herein;

b.     Whether Defendants failed to pay overtime wages to their employees as required by the NYLL and supporting regulations;

11

c.      Whether Defendants failed to keep true and accurate time and pay records for all hours worked by their employees, and other records required by the NYLL and the supporting regulations;

d.      Whether Defendants failed to comply with the notice and posting requirements of the NYLL and the supporting regulations;

e.      Whether Defendants failed to furnish Plaintiffs and the Rule 23 Class with an accurate statement of all wages, hours worked, rates paid, gross wages, and tips as required by the NYLL and the supporting regulations;

f.      Whether Defendants improperly classified Plaintiffs and the other Rule 23 Class members as independent contractors during the 2006-2008 U.S. Opens and thus denied Plaintiffs and Rule 23 class members the common benefits of employee status, including, but not limited to, overtime pay and gratuities;

g.      Whether Defendants improperly demanded, accepted and/or retained gratuities in the form of service charges and/or gratuities charged to and/or paid by patrons at the U.S. Open;

h.      Whether Defendants made improper deductions from the wages of Plaintiffs and the class members in violation of the NYLL;

i.      Whether Defendants failed to timely pay wages due to Plaintiffs and the Rule 23 Class in violation of the NYLL;

j.      Whether the members of the Rule 23 Class have sustained damages and, if so, the proper measure of such damages;

k.      Whether Defendants failed to pay spread of hours wages to their employees as required by the NYLL; and

l.        Whether Defendants' actions were willful.

34.      Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

35.      A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the damages suffered by individual Rule 23 Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for Plaintiffs and Rule 23 Class members to individually seek redress for the wrongful conduct alleged.  Individual class members lack the financial resources to conduct a thorough examination of Defendants' timekeeping and compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages.  Class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments regarding Defendants' practices.

36.      In addition, filing a wage claim with the New York State Department of Labor is not a superior method to resolve the claims of Plaintiffs and the Rule 23 Class. Plaintiff Daniel Yahraes and certain members of the class previously filed claims with this state agency in 2005 and in 2009.  Despite its mandate and its regulatory authority, the New York State Department of Labor has failed to satisfactorily resolve these claims even after conducting an audit of certain Defendants' labor practices in 2009, which audit was triggered by the claims of Plaintiffs and the Rule 23 Class.  Additionally, because of the fear of retaliation, affected employees are discouraged from filing a claim with the New York State Department of Labor.

## FACTUAL ALLEGATIONS

37.     The U.S. Open is held annually during a 15-day period beginning during the last week of August at the Tennis Center. The Open may extend longer than fifteen days if weather delays occur. Each day, the U.S. Open consists of two sessions of tennis. Gates to the tennis center open at 10:00 a.m. The day session begins at 11:00 a.m. and ends at 6:00 p.m. The evening session begins at 7:00 p.m. and ends anytime from 10:00 p.m. to 3:00 a.m., depending on the weather and the length of the matches being played.

38.     The high-profile matches at the Open take place at Arthur Ashe Stadium. Arthur Ashe Stadium features state-of-the-art broadcast and audio systems, approximately 90 luxury suites, five restaurants and a two-level player's lounge. U.S. Open guests have many options for upgrades beyond standard seats in Arthur Ashe Stadium, including a "Supreme Package" that allows a guest to dine in the Player Dining Room and can cost as much as $1,500 per session.

39.     Another option for patron seating at the Open is the "Luxury Suite Package." The price of renting a luxury suite varies, ranging from $13,000 per session during the early phases of the Open, to $60,000 per session on the last days of the Open during the final rounds of the tournament. Optional upgrades include, among other things, appearances in the suite by players.

40.     The luxury suites (which are usually rented out by sponsors and/or corporate clients for the duration of the Open or for a shorter period of time) are private lounges in Arthur Ashe Stadium that are equipped with plasma televisions, private restrooms, and offer "prime tennis seating on the in-stadium balcony." According to the 2009 US Open website, a luxury suite includes twenty luxury suite tickets, two "host

passes," three parking passes, and catering which is "additional and contracted directly with Levy Restaurants." The 2009 US Open website represented that Levy Restaurants charged a minimum of $1,800 per session for catering alone. The bills for catered food include a 21% "service charge." Based on Levy Restaurants' stated minimum food catering charges, the 21% service charge totaled a minimum of approximately $750 per day per suite. In 2004 through 2009, although service charges were imposed on all catering bills, none of the service charges were paid to Plaintiffs and the Rule 23 Class.

41.     The luxury suites are staffed by suite attendants. These suite attendants cater to the needs of the guests in a luxury suite. Suite attendants are in charge of maintaining the buffet at the suite, placing additional orders for food on behalf of the guests of a suite, and generally function as a concierge for the guests in a luxury suite.

42.     In 2005, defendant Restaurant Associates issued a food service mission statement containing guidelines for suite attendants (the "2005 Guidelines"). The 2005 Guidelines dictated the conduct, duties and responsibilities and work schedule of the suite attendants. The 2005 Guidelines, like the 2009 Guidelines issued by Levy Restaurants, described, among other things, the method of food presentation, ordering and delivery procedures, suite attendant job description and responsibilities as well as appearance and uniform standards to which the suite attendants were expected to adhere.

43.     Levy Restaurants in its "2009 Suite Training Guidelines" (the "Guidelines") dictates the duties and responsibilities of suite attendants. The Guidelines, issued each year, dictate the conduct and work of the suite attendants. In the Guidelines, Levy Restaurants concedes the integral role played by the suite attendants: "You are one of the most important elements of our guests' experience, and you will be the reason

many choose to visit us again and again over two weeks. Also, think of yourself as an ambassador [F]or our Company and the USTA ...." Guidelines at 2.

44.    The Guidelines set the starting time ("Shifts begin at 9:00 a.m.") and the "Daily Operating Schedule." The Guidelines also dictate where suite attendants may enter the Tennis Center and what suite attendants may not do during their shifts ("Suite Attendants are **NOT** permitted to sit on suite furniture at **ANY** time, even with the host permission. Suite Attendants may **NOT** stand in the outside seating terrace to view tennis .... **Remember, never say "no" in response to a question.**") Guidelines at 3, 7 (emphasis in original).

45.    Levy Restaurants "reserves the right to pull a [suite attendant's] credential at any time" due to attendance issues. Without credentials, which at least in 2007-2009 bore Levy Restaurants' name, a suite attendant is effectively fired from his/her employ at the Open.

46.    The Guidelines also dictated the suite attendants' duties and responsibilities *vis-à-vis* defendant Amerivents. The suite attendants were required to check in and out with Amerivents, to maintain a suite folder which was returned to Amerivents' office at the Open (Guidelines at 13) and to return the suite keys to Amerivents at the end of the day (Guidelines at 12). The Guidelines (at 11) provided that Amerivents may terminate suite attendants who were late repeatedly. Suite attendant assignments for the duration of the Open were fixed at or before the start of the Open and only Levy Restaurants and Amerivents had the authority to make alternate arrangements. Guidelines at 2.

16

47.     Suite attendants were required to be available for an orientation day as well as on the Saturday prior to the start of the Open for Arthur Ashe Kids' Day and then for the two-week duration of the Open.  The suite attendants were required to wear a uniform consisting of black pants, black shoes and a Restaurant Associates polo shirt during the 2004 and 2005 Opens and a Levy Restaurants polo shirt during the 2006-2009 Opens.  Suite attendants' credentials and uniforms identified them as employees of Restaurant Associates during the 2004-2005 Opens and of Levy Restaurants during the 2006-2009 Opens.

48.     According to Amerivents' 2007 and 2008 notices to suite attendants, suite attendants who were absent or late without prior written consent were charged ("It is your responsibility to cover your suite.  If for some reason you are not able to cover your assigned suite there will be a *Fee for any coverage by management . . .").  According to Amerivents' notices, fees in the amount of $10 for the first half hour and $18 per hour would be charged to the suite attendant in the event he/she missed a shift or day or was late.  Such fees are in violation of law.  Suite attendants were further advised that they could be fired for same day cancellation or "NO CALL/ NO SHOW."

49.     In the morning, the suite attendants reported to the Defendants' office on the Club Level of Arthur Ashe Stadium to pick up their keys and then reported to their suites.  Suite attendants started work at 9:00 a.m. and worked until one hour after the close of play (following the departure of all suite guests and signing out with the Suite Manager).  Suite attendants often worked in excess of 15 hours per day, seven days a week during the course of the Open.

50.    At the 2004 Open, Suite attendants were paid $17 per hour and received some overtime pay for hours in excess of forty hours per week. During the 2005-2009 Opens, Suite attendants were not properly paid wages due them including but not limited to overtime for hours in excess of 40 hours per week.

51.    During each year from 2004-2009, one or more of the named Defendants was the employer of Plaintiffs and the Rule 23 Class at the Open. In 2004, Restaurant Associates was the employer and/or joint employer of Plaintiff Yahraes and the Rule 23 Class. In 2005, Levy Restaurants and Restaurant Associates were the employers and/or joint employers of Plaintiff Yahraes and the Rule 23 Class. In 2006, Levy Restaurants and defendants Della Pace and Frain were the employers and/or joint employers of Plaintiff Yahraes, Plaintiff Ellie Hanagarne, and the Rule 23 Class. In 2007 and 2008, Amerivents, Levy Restaurants, Della Pace and Frain were the employers and/or joint employers of Plaintiffs and the Rule 23 Class. In 2009, defendants Amerivents, Levy Restaurants, Della Pace, Frain and JKDella were the employers and/or joint employers of Plaintiffs and the Rule 23 Class.

**The 2004 U.S. Open (August 30– September 12)**

52.    In 2004, Restaurants Associates provided food service at the Open. As Plaintiff Yahraes' employer and/or joint employer, Restaurant Associates paid Plaintiff on an hourly basis.

**The 2005 U.S. Open (August 29– September 11)**

53.    In 2005, Levy Restaurants and Restaurant Associates provided food service at the Open. Levy Restaurants and Restaurant Associates failed to properly pay wages including overtime to Plaintiff Yahraes and the Rule 23 Class despite the fact that

18

Plaintiff Yahraes and the class members worked more than 40 hours per week. In 2005, in a departure from prior practice, defendants Levy Restaurants and Restaurant Associates advised suite attendants that instead of being paid on an hourly basis, they would receive a "day rate" of $250 per day. However, immediately before or upon starting work at the 2005 Open, defendants Levy Restaurants and Restaurant Associates advised the suite attendants that they would earn not $250, but $210 per day. Levy Restaurants advised that no overtime would be paid.

**The 2006 U.S. Open (August 28 – September 10)**

54.    In 2006, defendants Levy Restaurants, Frain and/or Della Pace chose to treat Plaintiff Yahraes, Plaintiff Ellie Hanagarne, and the Rule 23 Class as independent contractors. Defendants Frain and/or Della Pace also deducted 5% from suite attendants' pay purportedly to cover New York State workers' compensation taxes.

55.    In 2006, the suite attendants were to be paid a day rate of $210 per day and were not paid overtime although they worked far in excess of 40 hours per week.

**The 2007 U.S. Open (August 27 - September 9) and**
**The 2008 U.S. Open (August 25 - September 7)**

56.    In each of 2007 and 2008, defendants Levy Restaurants, Amerivents, Frain and/or Della Pace treated the suite attendants as independent contractors. Defendants Levy Restaurants, Amerivents, Frain and/or Della Pace deducted 5% from suite attendants' pay purportedly to cover New York State workers' compensation taxes. The suite attendants were to be paid a day rate of $210 per day and were not paid overtime although they worked more than 40 hours per week.

**The 2009 U.S. Open (August 31-September 13)**

57.    In 2009, defendants Levy Restaurants, Amerivents, Frain, Della Pace and JKDella reclassified the suite attendants as employees rather than independent contractors. Suite attendants completed Form W-2. Suite attendants were not required to pay their own workers compensation taxes ("You will no longer have to pay the 5% fee for workers compensation.").

58.    Prior to the start of the 2009 U.S. Open, defendants Levy Restaurants, Amerivents, Frain, Della Pace and JKDella informed the suite attendants that their day rate was reduced from $210 to $170 per day.

59.    Although the day rate paid to suite attendants was reduced by 19%, prices charged for food and tickets were maintained or increased compared to prior years. The U.S. Open's attendance in 2009 subsequently set a new record.

60.    Before the 2009 U.S. Open, Frain sent the suite attendants the following email:

> It is getting close to that time of year again with the U.S. Open Tennis Tournament right around the corner. A lot has changed since last year's tournament, amongst them a new President, and of course the economic crisis that has gripped our nation. Many companies and individuals have had to make changes for the sake of survival, this year's U.S. Open Tennis Tournament is no different. There are some unavoidable changes that we wanted to communicate with you as soon as possible so you can make your decision on whether you want to return based on those changes.
>
> Here they are:
>
> **Day Rate: $170 per day (was previously $210 per day)**
>
> **Report Time: 10 am (was previously 9am)\*\***
>
> \*\*The report time change was something we were able to secure to reduce the hourly financial decrease that you would experience.
>
> You will be working as an employee

You will no longer have to pay the 5% fee for workers compensation.

That 5% fee reduced your day rate of $210 down to $199.50 last year

***

The deadline for letting us know [whether you are returning] is **Monday, July [6th]**, if you can respond back by email to sfrain@amerivents.com it would be greatly appreciated. (emphasis in original).

61.     Although Frain initially advised the suite attendants that their work day would start at 10:00 a.m., ultimately the starting time remained the same as in past years, namely 9:00 a.m.  Defendant Levy Restaurants advised on Orientation Day for the 2009 Open that suite attendants would start at 9:00 a.m.

62.     In 2009, defendants Levy Restaurants, Amerivents, Frain, Della Pace and/or JKDella deducted $2.45 daily from suite attendants' pay for meals.  These "meals" varied in substance, but frequently or always failed to comply with the regulations governing compensable meals.

**Defendants Are Employers and/or Joint Employers**

63.     During each of the 2004-2009 U.S. Opens, one or more of Defendants had and/or exercised sufficient control over Plaintiffs and the Rule 23 Class and, in consequence, were "employers" and/or "joint employers" under the FLSA, the NYLL and applicable law.

64.     During the 2004 Open, defendant Restaurant Associates was the employer and/or joint employer of Plaintiff Yahraes and the Rule 23 Class.

a.     The equipment belonging to Restaurant Associates was used for the work performed by Plaintiff Yahraes and the Rule 23 Class including but not limited to china, cutlery, platters, chafing dishes, coffee pots and serving pieces;

b.      Plaintiff Yahraes and the Rule 23 Class performed what was in essence a "discrete line-job" integral to the overall business objectives of Restaurant Associates in providing catered food to the suites and their patrons. This work required minimal training but was essential to the delivery and service of catered food in the suites.

c.      Restaurant Associates and its agents closely supervised the work of the suite attendants and exercised effective control of the terms and conditions of suite attendants' employment including dictating work schedules, dictating procedures for serving catered food, and dictating the conduct of suite attendants in their interactions with the suite's host and guests.  Restaurant Associates reserved the right to fire suite attendants under certain circumstances.

d.      During the duration of the Open, the suite attendants worked exclusively or predominantly for Restaurant Associates.

e.      The suite attendants did not have a business organization that could or did shift as a unit from one employer to another.

65.    During the 2005 Open, defendants Restaurant Associates and Levy Restaurants were employers and/or joint employers of Plaintiff Yahraes and the Rule 23 Class.

a.      The equipment belonging to Restaurant Associates and/or Levy Restaurants was used for the work performed by Plaintiff Yahraes and the Rule 23 Class including but not limited to china, cutlery, platters, chafing dishes, coffee pots and serving pieces;

b.      Plaintiff Yahraes and the Rule 23 Class performed what was in essence a "discrete line-job" integral to the overall business objectives of Restaurant Associates and/or Levy Restaurants in providing catered food to the suites and their patrons.  This work required minimal training but was essential to the delivery and service of catered food in the suites.

c.      Restaurant Associates and/or Levy Restaurants and their agents closely supervised the work of the suite attendants and exercised effective control of the terms and conditions of suite attendants' employment including dictating work schedules, dictating procedures for serving catered food, and dictating the conduct of suite attendants in their interactions with the suite's host and guests. Restaurant Associates and/or Levy Restaurants reserved the right to fire suite attendants under certain circumstances.

d.      During the duration of the Open, the suite attendants worked exclusively or predominantly for Restaurant Associates and/or Levy Restaurants.

e.      The suite attendants did not have a business organization that could or did shift as a unit from one employer to another.

66.     During the 2006 Open, defendants Levy Restaurants, Frain and Della Pace were joint employers of Plaintiff Yahraes, Plaintiff Ellie Hanagarne, and the Rule 23 Class.

a.      The equipment belonging to Levy Restaurants was used for the work performed by Plaintiff Yahraes, Plaintiff Ellie Hanagarne, and the Rule 23 Class including but not limited to china, cutlery, platters, chafing dishes, coffee pots and serving pieces;

23

b.    Plaintiff Yahraes, Plaintiff Ellie Hanagarne, and the Rule 23 Class performed what was in essence a "discrete line-job" integral to the overall business objectives of Levy Restaurants in providing catered food to the suites and their patrons. This work required minimal training but was essential to the delivery and service of catered food in the suites.

c.    Levy Restaurants and its agents and defendants Frain and Della Pace closely supervised the work of the suite attendants and exercised effective control of the terms and conditions of suite attendants' employment including dictating work schedules, dictating procedures for serving catered food, and dictating the conduct of suite attendants in their interactions with the suite's host and guests. Levy Restaurants, Frain and Della Pace reserved the right to fire suite attendants under certain circumstances. Levy Restaurants required suite attendants to take special training for the service of alcoholic beverages to suite patrons.

d.    During the duration of the Open, the suite attendants worked exclusively or predominantly for Levy Restaurants, Frain and Della Pace.

e.    The suite attendants did not have a business organization that could or did shift as a unit from one employer to another.

67.    During the 2007-2008 Opens, defendants Levy Restaurants, Frain, Amerivents and Della Pace and were joint employers of Plaintiffs and the Rule 23 Class.

a.    The equipment belonging to Levy Restaurants was used for the work performed by Plaintiffs and the Rule 23 Class including but not limited to china, cutlery, platters, chafing dishes, coffee pots and serving pieces;

24

b.      Plaintiffs and the Rule 23 Class performed what was in essence a "discrete line-job" integral to the overall business objectives of Levy Restaurants in providing catered food to the suites and their patrons.  This work required minimal training but was essential to the delivery and service of catered food in the suites.

c.      Levy Restaurants and its agents and Amerivents, Frain and Della Pace closely supervised the work of the suite attendants and exercised effective control of the terms and conditions of suite attendants' employment including dictating work schedules, dictating procedures for serving catered food, and dictating the conduct of suite attendants in their interactions with the suite's host and guests.  Levy Restaurants and Amerivents, Frain and Della Pace reserved the right to fire suite attendants under certain circumstances.  Levy Restaurants required suite attendants to take special training for the service of alcoholic beverages to suite patrons.

d.      During the duration of the Open, the suite attendants worked exclusively or predominantly for Levy Restaurants and Amerivents, Frain and Della Pace.

e.      The suite attendants did not have a business organization that could or did shift as a unit from one employer to another.

68.     During the 2009 Open, defendants Della Pace, Frain, JKDella, Amerivents and Levy Restaurants were joint employers of Plaintiffs and the Rule 23 Class.

a.    The equipment belonging to Levy Restaurants was used for the work performed by Plaintiffs and the Rule 23 Class including but not limited to china, cutlery, platters, chafing dishes, coffee pots and serving pieces;

b.    Plaintiffs and the Rule 23 Class performed what was in essence a "discrete line-job" integral to the overall business objectives of Levy Restaurants in providing catered food to the suites and their patrons.  This work required minimal training but was essential to the delivery and service of catered food in the suites.

c.    Levy Restaurants and its agents and Amerivents, JKDella, Frain and Della Pace closely supervised the work of the suite attendants and exercised effective control of the terms and conditions of suite attendants' employment including dictating work schedules, dictating procedures for serving catered food, and dictating the conduct of suite attendants in their interactions with the suite's host and guests.  Levy Restaurants and Amerivents, JKDella, Frain and Della Pace reserved the right to fire suite attendants under certain circumstances.  Levy Restaurants required suite attendants to take special training for the service of alcoholic beverages to suite patrons.

d.    During the duration of the Open, the suite attendants worked exclusively or predominantly for Levy Restaurants and Amerivents, JKDella, Frain and Della Pace.

e.    The suite attendants did not have a business organization that could or did shift as a unit from one employer to another.

## The Suite Attendants Were Employees and Not Independent Contractors

69.     From 2004 through 2009, the suite attendants were the employees of some of defendants as set forth above.  The suite attendants were required to work for the duration of the U.S. Open starting with orientation and continuing through closing ceremonies.  They did not set or dictate their own hours or schedules.  Each day of the U.S. Open, suite attendants were required to be on premises from 9:00 a.m. and to work for the duration of the day and evening sessions which often continued into the early hours of the following day.  Suite attendants had no ability to set their own hours or daily pay rates.

70.     Defendants controlled and/or directed the manner in which the suite attendants performed their duties.

71.     The suite attendants had no opportunity to realize a profit or incur a loss in connection with the performance of their duties at the U.S. Open.  Defendants did not permit them to work for another company during working hours.

72.     Defendants did not permit the suite attendants to work from home or at any preferred location.  All of the duties performed by the suite attendants were performed at the Arthur Ashe Stadium.

73.     Defendants provided the suite attendants with the equipment, tools and supplies necessary for performing their duties.  The suite attendants were required to wear uniforms specified by Defendants.

74.     Defendants had the authority to hire and fire the suite attendants.  Defendants reserved the right to remove suite attendants from a suite at any time, which could result in the termination of their employment.

75.     Defendants required the suite attendants to obtain permission from them to be excused for absences and tardiness.  Defendants reserved the right to deduct fees from suite attendants for absences or tardiness.

76.     Defendants required the suite attendants to attend meetings and/or training sessions, including a two-hour "alcohol awareness program" before each U.S. Open, as a condition of employment.  Defendants failed to pay for the hours of attendance by the suite attendants in such alcohol awareness programs.

77.     Defendants supervised and evaluated the job performance of the suite attendants on a regular basis.

78.     The work performed by the suite attendants was routine work that did not require initiative, judgment and foresight.

79.     Defendants depended upon the suite attendants as an integral part of their businesses in operating the luxury suites and providing catering in those suites.

### FIRST CLAIM FOR RELIEF
### Fair Labor Standards Act –Unpaid Wages And Overtime
### (Brought on behalf of Plaintiffs and the FLSA Collective Action Members Against Levy Restaurants, Amerivents, JKDella, Scott Frain, and James Della Pace)

80.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

81.     During the FSLA Class Period (the 2007-2009 Opens), Plaintiffs and others similarly situated were "employees" of Defendants within the meaning of the FLSA, 29 U.S.C. §203(e) and (g).

82.     During the FSLA Class Period, Defendants have been, and continue to be, "employers" and/or joint employers engaged in interstate "commerce" and/or the

production or sale of "goods" for "commerce" within the meaning of the FLSA, 29 U.S.C. §203.

83.    During the FLSA Class Period, Defendants' businesses have had annual gross revenues in excess of $500,000.

84.    Plaintiffs consent in writing to be parties to this action pursuant to 29 U.S.C. §216(b).    Plaintiffs' written consent is attached hereto and incorporated by reference.

85.    Defendants were required to properly pay Plaintiffs and others similarly situated all wages due including wages for required training programs as well as applicable overtime wages for all hours worked in excess of 40 hours in a workweek.

86.    During the FLSA Class Period, Defendants failed to pay Plaintiffs and the Collective Action Members all wages due including overtime wages of not less than one and one-half times the regular rate of pay for each hour worked in excess of 40 hours in a workweek to which they were entitled under the FSLA, 29 U.S.C. §207.

87.    During 2007 and 2008, Defendants illegally misclassified Plaintiffs and the FLSA Collective Action Members as "independent contractors" in an effort to avoid their obligation to pay Plaintiffs and the FLSA Collective Action Members overtime compensation in accordance with the FLSA, 29 U.S.C. §207. Defendants lacked any good faith basis for that classification.

88.    During the 2009 U.S. Open, Defendants properly classified FLSA Collective Action Members as "employees," yet failed to pay them all wages due including overtime compensation in accordance with the FLSA, 29 U.S.C. §207.

89.     Defendants' violation of the overtime requirements of the FLSA was part of their regular business practice and constituted a pattern, practice, and/or policy.

90.     As a result of Defendants' violations of the FLSA, Plaintiffs and others similarly situated have suffered damages by being denied pay for all of their hours worked, by being denied overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages in an amount equal to their unpaid wages, prejudgment and post judgment interest, reasonable attorneys' fees, costs, and punitive damages pursuant to 29 U.S.C. §216(b).

91.     Plaintiffs and the FLSA Collective Action Members seek to enjoin Defendants from their continuing violations of 29 U.S.C. §207 at the 2010 U.S. Open and U.S. Opens in future years.

92.     Defendants' unlawful conduct, as described above, was willful and intentional.  Defendants knew or should have known that the practices complained of herein were unlawful.  Defendants knew that Plaintiffs and other Class Members routinely worked in excess of forty hours per week.  During 2007 and 2008, Defendants improperly classified Plaintiffs and others similarly situated as "independent contractors." Defendants lacked any good-faith basis for that classification.

93.     Defendants have not made a good faith effort to comply with the FSLA with respect to the compensation of Plaintiffs and others similarly situated.

94.     Because Defendants' violations of the FSLA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §255(a).

## SECOND CLAIM FOR RELIEF
### Fair Labor Standards Act, Failure to Post Notice of Employee Rights
**(Brought on behalf of Plaintiffs and the FLSA Collective Action
Members Against All Defendants Except Restaurant Associates)**

95.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

96.    29 CFR 516.4 requires every employer employing any employees subject to the Fair Labor Standard Act's minimum wage provisions to post and keep posted a notice explaining the FLSA as prescribed by the Wage and Hour Division, in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy.

97.    Defendants violated 29 CFR 516.4 by failing to post such a notice in their establishment.

98.    Plaintiffs and the FLSA Collective Action Members seek to enjoin Defendants from its continuing violations of 29 CFR 516.4.

## THIRD CLAIM FOR RELIEF
### FLSA Notice and Record-Keeping Requirements
**(Brought on behalf of Plaintiffs and the FLSA Collective Action
Members Against All Defendants Except Restaurant Associates)**

99.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

100.    Federal law requires Defendants to keep payroll records of Plaintiffs and the FLSA Collective Action Members for a specified period.

101.    29 CFR 516.2 requires that employers who employ employees who are subject to minimum wage and overtime provisions pursuant to section 6 or both sections 6 and 7(a) of the FLSA to maintain and preserve payroll or other records containing

31

certain information and data with respect to each employee, including, *inter alia*, hours worked each workday and total hours worked each workweek.

102.    Defendants violated 29 CFR 516.4 by failing to establish, maintain and preserve the payroll records of Plaintiffs and the FLSA Collective Action Members.

103.    Plaintiffs and the FLSA Collective Action Members seek to enjoin Defendants from their continuing violation of 29 CFR 516, *et seq.*, at future U.S. Opens.

## FOURTH CLAIM FOR RELIEF
### New York Labor Law, Article 19: Unpaid Wages and Overtime
### (Brought on behalf of Plaintiffs and the Rule 23 Class Against All Defendants)

104.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

105.    During the Rule 23 Class Period, Plaintiffs and members of the Rule 23 Class were "employees" within the meaning of NYLL, Article 6, §190(2) and supporting New York regulations.

106.    During the Rule 23 Class Period, Defendants were "employers" and/or joint employers and agents and/or officers of a corporation within the meaning of NYLL Article 6, §190(3) and 196-d and any supporting regulations.

107.    Throughout the Rule 23 Class Period, Defendants failed to pay Plaintiffs and the Rule 23 Class all wages due including wages for training time and overtime wages of not less than one and one-half times the regular rate of pay for each hour worked in excess of 40 hours in a workweek in violation of the NYLL, Article 19, §650, *et seq.*, and the supporting New York State Department of Labor regulations, including, but not limited the regulations in N.Y. Comp. Codes R. & Regs. tit. 12, §§142-2.2 and 137-1.3.

108.    Defendants' failure to pay Plaintiffs and the Rule 23 Class overtime wages was willful within the meaning of NYLL, Article 19, §663.  Defendants were aware of the complaints to and investigation by New York Department of Labor in 2005 and in 2009 related to unpaid overtime wages due to Plaintiffs and the Rule 23 Class. Nevertheless, Defendants continued to deprive Plaintiffs and the Rule 23 Class of their overtime wages.

109.    During the U.S. Opens held between 2006 and 2008, Defendants improperly classified Plaintiffs and others similarly situated as "independent contractors" in order to avoid paying overtime compensation to Plaintiffs and members of the Rule 23 Class. Defendants lacked any good-faith basis for that classification.

110.    Due to Defendants' violations of the NYLL, Plaintiffs and members of the Rule 23 Class are entitled to recover from Defendant their unpaid wages including overtime wages of not less than one and one-half times the regular rate of pay for each hour worked in excess of 40 hours in a workweek, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

111.    Plaintiffs and the Rule 23 Class seek to enjoin Defendants from their continuing violations of the NYLL, Article 19.

112.    Plaintiffs and the Rule 23 Class do not seek liquidated damages under the NYLL on behalf of the Class but reserve their right to do so pending the outcome of the United States Supreme Court's ruling in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Company*, No. 08-1008.

### FIFTH CLAIM FOR RELIEF
**New York Labor Law, Article 6 – Unlawful Retention of Gratuities**
**(Brought on behalf of Plaintiffs and the Rule 23 Class Against All Defendants)**

113.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

114.    In each of 2004-2009, Defendants imposed a 21% "service charge" on all food catered in the luxury suites in Arthur Ashe Stadium. This charge purported to be a gratuity for Plaintiffs and the members of the Rule 23 Class but was not distributed to Plaintiffs and the members of the Rule 23 Class. This service charge appeared on the bill for catered food and drink after each session and was paid by the person or persons who rented the luxury suites. Defendants failed to notify its customers that the service charges were not gratuities and not paid to Plaintiffs and members of the Rule 23 Class. At no time did Defendants provide clear written notice to the suite patrons or persons renting the suites that the service charge was not a gratuity. A reasonable patron of the luxury suites would likely believe that the service charge was a gratuity intended for Plaintiffs and the members of the Rule 23 Class.

115.    Such service charges were "gratuities" under NYLL, Article 6, Section §196-d.

116.    Defendants unlawfully demanded, accepted and/or retained the service charges in violation of the NYLL, Article 6, Section §196-d and supporting New York State Department of Labor Regulations.

117.    Defendants have willfully violated NYLL Article 6, §§196-d and the supporting New York State Department of Labor Regulations, including, but not limited to, the regulations in 12 N.Y.C.R.R. §137-2.5.

118.     Plaintiffs and the members of the Rule 23 Class are entitled to recover from Defendants the 21% service charge, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

119.     Plaintiffs and the Rule 23 Class seek to enjoin Defendants from their continuing violations of the NYLL, Article 6 at future U.S. Opens.

120.     Plaintiffs and the Rule 23 Class do not seek liquidated damages under the NYLL on behalf of themselves and the Class but reserve the right to do so pending the outcome of the United States Supreme Court's ruling in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Company*, No. 08-1008.

### SIXTH CLAIM FOR RELIEF
### New York Labor Law, Article 6 – Improper Wage Deductions
### (Brought on behalf of Plaintiffs and the Rule 23 Class Against All Defendants)

121.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

122.     In connection with each of the 2006-2008 US Opens, defendants deducted 5% from suite attendants' pay purportedly to cover New York State workers compensation taxes. Such deductions were improper and in violation of NYLL §193.

123.     Defendants failed to provide "meals" to Plaintiffs and the Rule 23 Class as the term is defined by 12 NYCRR §137-3.8, which permits meal deductions only if certain types of foods are provided during reasonable meal periods.

124.     Defendants' improper meal deductions from the wages of Plaintiffs and the Rule 23 Class violate the NYLL Article 6, §193 and the supporting New York State Department of Labor Regulations, including, but not limited to, the regulations in 12 NYCRR §§137-2.5; 137-1.9; and 137-3.8.

125.    In at least 2007 and 2008, defendants Amerivents, Frain and Della Pace informed suite attendants in writing that they would be charged hourly fees for lateness or absence. Such fees or deductions violate New York labor laws and regulations including 12 NYCRR §137-2.5.

126.    Due to Defendants' violations of the NYLL, Plaintiffs and the members of the Rule 23 Class are entitled to recover from Defendants the improper deductions, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

127.    Plaintiffs and the Rule 23 Class seek to enjoin Defendants from their continuing violations of the NYLL.

128.    Plaintiffs and the Rule 23 Class do not seek liquidated damages under the NYLL on behalf of the Class but reserve their right to do so pending the outcome of the United States Supreme Court's ruling in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Company*, No. 08-1008.

**SEVENTH CLAIM FOR RELIEF**
**New York Labor Law, Articles 6 and 19 – Spread of Hours Pay**
**(Brought on behalf of Plaintiffs and the Rule 23 Class Against All Defendants)**

129.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

130.    During the Rule 23 Class Period, Defendants failed to pay Plaintiffs and the members of the Rule 23 Class an additional hour's pay at minimum wage for every day that they worked a spread of hours or in excess of 10 hours, in violation of N.Y. Labor Law, §190, *et seq.*, and 650, *et seq.*, and the supporting New York State Department of Labor Regulations, including, but not limited to, the regulations in 12 NYCRR §§137-1.

131.    Defendants' failure to pay an additional hour's pay at minimum wage for every day that Plaintiffs and members of the Rule 23 Class worked a spread of hours in excess of 10 hours was willful within the meaning of N.Y. Labor Law §663 and 198 (1-a).

132.    Due to Defendants' violations of the NYLL, Plaintiffs and the members of the Rule 23 Class are entitled to recover from Defendants their unpaid wages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

133.    Plaintiffs and the Rule 23 Class seek to enjoin Defendants from its continuing violations of the NYLL, Article 6 and 19.

134.    Plaintiffs and the Rule 23 Class do not seek liquidated damages under the NYLL on behalf of the Class but reserve their right to do so pending the outcome of the United States Supreme Court's ruling in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Company*, No. 08-1008.

### EIGHTH CLAIM FOR RELIEF
### NYLL, Article 6, §198-d and NYCCR §137-2.3
### Failure to Post Notice of Employee Rights
### (Brought on behalf of Plaintiffs and the Rule 23 Class Against All Defendants)

135.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

136.    NYLL, Article 6 §198-d provides:

Every employer engaged in the sale or service of food or beverages shall post in his establishment, in a place accessible to his employees and in a visually conspicuous manner, a copy of sections one hundred ninety-three and one hundred ninety-six-d of this chapter and any regulations promulgated pursuant thereto relating to illegal deductions from wages and tips by employers.

137.   Defendants were engaged in the sale and/or service of food or beverages during the employment of Plaintiffs and the Rule 23 Class at the U.S. Open.

138.   NYCRR §137-2.3 requires employers in the restaurant industry to "post, in a conspicuous place in his or her establishment, a notice issued by the Department of Labor summarizing minimum wage provisions."

139.   Defendants violated NYLL, Article 6 §198-d and NYCRR §137-2.3 by failing to post such a notice in its establishment.

140.   Plaintiffs and the Rule 23 Class seek to enjoin Defendants from their continuing violations of NYLL, Article 6 §198-d, NYCRR §137-2.3 and NYCRR §137-2.3.

**NINTH CLAIM FOR RELIEF**
**Violations of New York Labor Law, Article 6, §195**
**Notice and Record-Keeping Requirements**
**(Brought on behalf of Plaintiffs and the Rule 23 Class Against All Defendants)**

141.   Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

142.   State law requires Defendants to keep payroll records of Plaintiffs and the members of the Rule 23 Class for a specified period.

143.   NYCRR §137-2.1(a) requires employers in the restaurant industry to establish, maintain, and preserve weekly payroll records for at least 6 years.  These records must show the following for each employee:

      (1)   name and address;

      (2)   social security number;

      (3)   occupational classification and wage rate;

(4)    the number of hours worked daily and weekly, including the time of arrival and departure for each employee working a split shift or spread of hours exceeding 10;

(5)    the amount of gross wages;

(6)    deductions from gross wages;

(7)    allowances, if any, claimed as part of the minimum wage;

(8)    money paid in cash; and

(9)    student classification.

144.    Prior to October 26, 2009, the NYLL, Article 6, §195(1) required "employers to notify his employees at the time of hiring of the rate of pay and of the regular pay day designated by the employer."

145.    Defendants violated NYLL Article 6, §195 and NYCRR §137-2.1 by (i) failing to establish, maintain and preserve the payroll records of Plaintiffs and members of the Rule 23 Class which reflect the items enumerated above the mandated time periods and (ii) failing to notify Plaintiffs and members of the Rule 23 Class of their rate of pay at the time of hiring.

146.    Plaintiffs and the Rule 23 Class seek to enjoin Defendants from their continuing violation of NYLL Article 6, §195, as amended, and NYCRR §137-2.1 at future U.S. Opens.

**TENTH CLAIM FOR RELIEF**
**Violations of New York Labor Law, Article 6, §191(1) and (3)**
**Failure to Timely Pay Wages**
**(Brought on behalf of Plaintiffs and the Rule 23 Class Against All Defendants)**

147.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

148. NYLL, Article 6, §191 requires employers to pay manual workers on a weekly basis and not later than seven calendar days after the end of the week in which the wages are earned. For a terminated employee, the employer is required to pay wages not later than the regular pay day for the pay period during which the termination occurred.

149. As a result of Defendants' violations of the N.Y. Labor Law and their failure to pay or timely pay all wages (including overtime when due), Plaintiffs and the members of the Rule 23 Class have been, and continue to be damaged.

150. Plaintiffs and the Rule 23 Class seek monetary damages, reasonable attorneys' fees and costs and prejudgment and post-judgment interest.

151. Plaintiffs and the Rule 23 Class also seek injunctive relief, declaring Defendants' conduct to be illegal and in violation of NYLL and enjoining Defendants from continuing their illegal conduct at future U.S. Opens.

152. Plaintiffs and the Rule 23 Class do not seek liquidated damages under the NYLL on behalf of the Class but reserve their right to do so pending the outcome of the United States Supreme Court's ruling in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Company*, No. 08-1008.

### ELEVENTH CLAIM FOR RELIEF
### Unjust Enrichment
### (Brought on behalf of Plaintiffs and the Rule 23 Class Against All Defendants)

153. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

154. Defendants have unjustly enriched themselves at the expense of Plaintiff and the Rule 23 Class by failing to pay all wages due including overtime, by failing to

pay them in a timely manner, and by improperly retaining gratuities and making improper deductions from the wages of Plaintiffs and the Rule 23 Class.

155.    Plaintiffs and the Rule 23 Class are entitled to compensatory damages from Defendants, in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs and the Rule 23 Class and/or FLSA Collective Action members pray for the following relief:

A.    An order certifying the case as a collective action for the violations of the FLSA, as it pertains to the First, Second and Third Claims under 29 U.S.C. §216(b) for the class of employees described herein and designating Plaintiff's counsel as Class counsel;

B.    An order certifying the case as a class action pursuant to Federal Rule of Civil Procedure 23 as it pertains to Claims Four through Eleven for the class of employees described herein, certifying Plaintiffs as the class representatives and designating Plaintiffs' counsel as Class counsel;

D.    Judgment for Plaintiffs and the FLSA Collective Action members for all statutory, compensatory, consequential, liquidated, and punitive damages, or any other damages authorized by law or equity, sustained as a result of Defendants' unlawful conduct for which Defendants are jointly and severally liable, as well as prejudgment and post-judgment interest;

E.    Judgment for Plaintiffs and the Rule 23 Class members for all statutory, compensatory, and consequential damages, or any other damages authorized by law or

equity, sustained as a result of Defendants' unlawful conduct, Defendants are jointly and severally liable, as well as prejudgment and post-judgment interest;

F.      An injunction requiring defendants to pay all statutorily-required wages and gratuities pursuant to the FLSA and New York Labor Law and requiring Defendants to comply with the FLSA and the NYLL at future U.S. Opens.

G.      An award to Plaintiffs and the other Rule 23 Class and/or Collective Action members of their reasonable attorneys' fees, costs and expenses as authorized by law;

H.      Any and all other relief as authorized by the federal or state statutes, common law or equity which the Court deems appropriate under the circumstances.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury.

Dated: New York, New York
       March  3  , 2010

ABBEY SPANIER RODD & ABRAMS, LLP

By: _Judith L. Spanier_____

Judith L. Spanier
jspanier@abbeyspanier.com
Orin Kurtz
okurtz@abbeyspanier.com
Grace E. Parasmo
gparasmo@abbeyspanier.com
212 East 39th Street
New York, New York 10016
Telephone:  212-889-3700

LAW OFFICES OF MITCHELL SCHLEY, LLC

By: _Mitchell Schley_____

Mitchell Schley, Esq.
mschley@schleylaw.com
245 Park Avenue, 24th Floor
New York, New York 10167
(212) 672-1848

**Attorneys for Plaintiffs**

## FAIR LABOR STANDARDS ACT CONSENT

I consent to be a party plaintiff in a lawsuit against Amerivents, Levy Restaurants Inc., Restaurant Associates Events Corp., RA Tennis Corp., JK Della Sales Dimensions, Inc., Scott Frain and James Della Pace and other related entities and individuals in order to seek redress for violations of Fair Labor Standards Act, pursuant to 29 U.S.C. §216(b).  I hereby designate Abbey Spanier Rodd & Abrams, LLP and the Law Offices of Mitchell Schley, LLC, to represent me in such a lawsuit.


_____
Signature

DANIEL BOYD YAHRAES
Full Legal Name (Print)

3074 48th Street, Apt. 2D
Address

Long Island City, NY        11103
City, State                 Zip Code

## FAIR LABOR STANDARDS ACT CONSENT

I consent to be a party plaintiff in a lawsuit against Amerivents, Levy Restaurants Inc., Restaurant Associates Events Corp., RA Tennis Corp., JK Della Sales Dimensions, Inc., Scott Frain and James Della Pace and other related entities and individuals in order to seek redress for violations of Fair Labor Standards Act, pursuant to 29 U.S.C. §216(b). I hereby designate Abbey Spanier Rodd & Abrams, LLP and the Law Offices of Mitchell Schley, LLC, to represent me in such a lawsuit.


_Ellie Hanagarne_
Signature

_Ellie Hanagarne_
Full Legal Name (Print)

_316 E 700N Apt 1_
Address

_Provo, UT 84606_
City, State            Zip Code

## FAIR LABOR STANDARDS ACT CONSENT

I consent to be a party plaintiff in a lawsuit against Amerivents, Levy Restaurants Inc., Restaurant Associates Events Corp., RA Tennis Corp., JK Della Sales Dimensions, Inc., Scott Frain and James Della Pace and other related entities and individuals in order to seek redress for violations of Fair Labor Standards Act, pursuant to 29 U.S.C. §216(b). I hereby designate Abbey Spanier Rodd & Abrams, LLP and the Law Offices of Mitchell Schley, LLC, to represent me in such a lawsuit.


Signature

Kyle Hanagarne
Full Legal Name (Print)

316 E 700 N #1
Address

Provo, UT          84606
City, State          Zip Code