UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


```
----------------------------X
                            :
DANIEL B. YAHRAES,          :
et al.,                     :    10-CV-935 (SLT)(SMG)
              Plaintiff.    :
                            :    December 10, 2010
                            :
         V.                 :    Brooklyn, New York
                            :
RESTAURANT ASSOCIATES       :
EVENTS CORP., et al.,       :
              Defendant.    :
----------------------------X
```

TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE
BEFORE THE HONORABLE STEVEN M. GOLD
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:          JUDY SPANIER, ESQ.


For the Defendant:          ANDREW MARKS, ESQ.
                            SARA SHEINKIN, ESQ.
                            JEROME COLEMAN, ESQ.
                            JOE CARTAFALSA, ESQ.

Audio Operator:


Court Transcriber:          ARIA TRANSCRIPTIONS
                            c/o Elizabeth Barron
                            375 Salt Point Turnpike, #5D
                            Poughkeepsie, NY 12603
                            (215) 767-7700


Proceedings recorded by electronic sound recording,
transcript produced by transcription service

1          THE COURT:  This is Judge Gold.  Good afternoon.

2          MS. SPANIER:  Good afternoon, Your Honor.  This is

3    Judy Spanier from Abbey Spanier, for plaintiffs.

4          THE COURT:  Ms. Spanier for the plaintiffs.

5          Who is on for Restaurant Associates?

6          MR. MARKS:  Andrew Marks and Sara Sheinkin from

7    the firm of Littler Mendelson.

8          THE COURT:  And who else is on?

9          MR. COLEMAN:  For Amerivents, Jerome Coleman and

10   Joe Cartafalsa from Putney Twombly Hall & Hirson.

11         THE COURT:  And your client again is?

12         MR. COLEMAN:  Amiervents.

13         THE COURT:  Thank you.

14         Is that everyone?

15         MR. COLEMAN:  Yes.

16         THE COURT:  Thank you.

17         MS. SPANIER:  Yes, Your Honor.

18         THE COURT:  So I have an exchange of recent

19   correspondence, and I guess the plaintiff wants to move

20   forward and get that conditional certification, and the

21   defendants want to move to dismiss.

22         Let me ask you this:  First of all, if the stay

23   continues while the motion to dismiss is litigated, are the

24   defendants prepared to continue to have the limitations

25   tolling provision remain in effect as well?

1          MR. COLEMAN:  On behalf of Amerivents, yes, Your

2     Honor.

3          MR. MARKS:  Nothing would happen until August

4     anyway because this is a two-week assignment, Your Honor --

5     well, three weeks maybe, at the U.S. open.  So no one is

6     working there now and no one will be working until August of

7     2011.

8          THE COURT:  I see.

9          MR. MARKS:  It will be over in September of 2011.

10         MS. SPANIER:  Your Honor, on behalf of plaintiffs,

11    I'd like to argue against any stay, but we would of course

12    -- if the Court were inclined to stay the matter, we would

13    want the tolling of the -- plaintiffs need to opt into the

14    case.  We would want that period tolled.

15         THE COURT:  Well, they both just agreed to that on

16    the record, and I would certainly so order it.  What's the

17    argument against the stay, given the fact that there is this

18    New York State Department of Labor adjudication and other

19    grounds asserted in these letters for moving to dismiss?

20         And in particular, here's the issue that troubled

21    me about this, Ms. Spanier.  Am I pronouncing your name

22    correctly?  I hope so.

23         MS. SPANIER:  Yes.  Yes.

24         THE COURT:  Let's assume that we issue a

25    collective action notice and it -- is there also a Rule 23

1  application?

2          MS. SPANIER:  No, there is not, Your Honor.

3          THE COURT:  Okay.  Oh, because we don't go back

4  more than three years, I guess.

5          MS. SPANIER:  Well, no.  There is not a Rule 23

6  application because we need to do discovery in order --

7          THE COURT:  Okay.

8          MS. SPANIER:  -- to make motions for class

9  certification.

10          THE COURT:  All right.  Let's say we send out some

11  kind of a notice.  Then let's say -- and we describe the

12  claims.  And then let's say there's an order on these

13  motions that changes in some way the contours of those

14  claims.  Have we provided the best practicable notice or

15  will there be a -- or will we be in a better position to

16  describe the case and alert the parties to what the benefits

17  of opting in are after the motion practice is resolved?

18  That's what I've been struggling with.

19          MS. SPANIER:  Your Honor, in the first -- in the

20  first instance, the district judge has before her two

21  letters, the defendants requesting permission to move to

22  dismiss and our letter opposing.  And I won't go into those,

23  other than to say that we think that at this stage, it's not

24  entirely clear that the trial court, the district court is

25  going to allow the defendants to make the motion.  We have

1   not heard back from the Court.

2             THE COURT:  Okay.

3             MS. SPANIER:  Secondly, I think that we're not

4   talking about -- in the first instance, we're not talking

5   about an enormous group of people, we're talking about a

6   couple hundred people.  We have people who -- 25 people or

7   maybe more who have already opted into the case.  We do get

8   calls from people from time to time who are still interested

9   in finding out what the case is about.

10            To the extent that we're talking about the federal

11  claims, we did brief before Judge Townes on our motion for

12  reconsideration the reasons why we think that the New York

13  State Department of Labor proceeding has no effect at all on

14  the federal claims.  I understand defendants disagree with

15  that.  But the issues have been fully aired in briefing

16  before the Court but not resolved, not really addressed.

17            We think that the notice at this stage -- at this

18  stage, all the notice really is addressed to is advising

19  people of -- and I think you have a draft notice before you

20  as part of the papers that were filed.  We tracked the

21  notice that the -- I think from one of your cases, Your

22  Honor, Irriarty (ph) v. -- I forget the defendant's name but

23  it's the Irriarty case.

24            I don't think that sending a notice out at this

25  point will be in any way problematic.  I think it will be

1    the best practicable notice.  I think Section 216

2    contemplates that a notice like this is going to go out at

3    the front end of the case.  The defendants were the ones who

4    requested the stay.  This action is getting younger, it's

5    getting older.  This case was started, Your Honor, at the

6    beginning of March of this year, and we're noplace on this

7    case.

8            I think that if need be, some correction could go

9    out, but I don't frankly envision a correction because I

10   think the case law is clear that the federal claims are not

11   affected by anything that the Department of Labor has done.

12   The Department of Labor sent out checks.  There were no

13   releases that went with the checks.  There were no

14   explanations with regard to the calculations of the amounts

15   sent.

16           People who we've spoken with, including our

17   clients, certainly disagree with the amounts that they've

18   received.  It didn't address interest, it didn't address the

19   double damages that these people are entitled to under the

20   FLSA.  All that holding this off will do -- I don't know how

21   long the briefing process will be if the district court

22   allows it and how long it will take for these people to get

23   a decision -- for the district court to issue a decision on

24   a motion to dismiss.  But I think -- I think people move,

25   people scatter.  The addresses are going to get stale.  I

1    think the members, the collective action members will

2    potentially be prejudiced by a delay, a further delay in

3    this matter.

4          THE COURT:  Are the defendants willing to offer

5    liquidated damages with respect to what the Department of

6    Labor has adjudicated?

7          MR. COLEMAN:  Your Honor, for Amerivents, we're

8    not.  Quite frankly, the Department of Labor had the

9    opportunity to ward liquidated damages and chose not to.  So

10   there's a standard for liquidated damages we would argue

11   that the plaintiffs have not met and that the Department of

12   Labor, the agency in the first instance --

13         THE COURT:  The FLSA has a standard for liquidated

14   damages?  What is it?

15         MR. COLEMAN:  Correct.  You do not get them

16   automatically, Your Honor.

17         THE COURT:  Under the FLSA?

18         MR. COLEMAN:  Correct.

19         THE COURT:  What's the standard?

20         MR. COLEMAN:  It's the bad faith standard.

21         THE COURT:  Okay.  I was not -- I'm not familiar

22   with that.  I'll have to study it more closely.

23         MR. COLEMAN:  Sure.  I can give you a citation.  I

24   don't have it offhand.  But you do not -- it's not a statute

25   where liquidated damages are awarded without meeting that

1   standard.  And the state followed the FLSA in that regard.

2   It quite frankly adopts the FLSA procedures in that regard,

3   and the Department of Labor chose not to award liquidated

4   damages.  You know, that would be our argument in our

5   defense.

6           THE COURT:  All right.

7           Are the plaintiffs prepared to carry the expense

8   of the notice --

9           MS. SPANIER:  Yes, Your Honor.

10          THE COURT:  -- pending the outcome of the motion

11  practice?

12          MS. SPANIER:  Your Honor, we would be prepared to

13  carry the expense.  I don't think it's a significant expense

14  at all to send out notice at this stage.

15          THE COURT:  All right.

16          MR. MARKS:  Can I be heard, Your Honor --

17          THE COURT:  Sure.

18          MR. MARKS:  -- for Restaurant Associates?

19          THE COURT:  Sure.

20          MR. MARKS:  The fact of the matter is that the

21  notice, in our opinion, will be confusing.  The payment --

22  the employees are employed by Amerivents and the payment

23  from the Department of Labor was on behalf of Amerivents.

24  And the notice that plaintiffs wished to send out would

25  indicate that the employer is not just

1    Amerivents but other individuals, other companies,

2    Restaurant Associates not being one of them.

3              THE COURT:  I'm not deciding on the notice right

4    now, I'll deciding that I'll take on the motion.

5              MR. MARKS:  Oh, okay.

6              THE COURT:  All right?  I have not reviewed the

7    motion papers, I just reviewed the recent -- this was to

8    figure out whether we're going to move forward or not.

9              MR. MARKS:  But I don't know -- I don't think that

10   the motion papers on the notice deal with this because the

11   situation has changed.

12             THE COURT:  Okay.  I will allow you to re-brief

13   it.

14             MR. MARKS:  Okay.

15             THE COURT:  But I'm not going to stay the case

16   indefinitely.  I agree with the plaintiff that we're going

17   to lose track of these people.  They're willing to pay the

18   costs of the notice.  If there has to be a corrective

19   notice, I presume they will pay the costs of that.  And I

20   just don't see the prejudice to the defendant of at least

21   gathering the people and doing the document discovery that

22   will inevitably have to be done, if the case survives in any

23   form anyway.  So we'll go forward.

24             Now, the plaintiff originally moved for 216(b)

25   certification sometime ago; is that correct?

1          MS. SPANIER:  In May of 2010, Your Honor.

2          THE COURT:  Are those papers the papers you want

3    to rest on, or do you want to freshen them in any way?

4          MS. SPANIER:  Your Honor, I think that so long as

5    we have an opportunity to do a reply --

6          THE COURT:  Yes.

7          MS. SPANIER:  -- we still stand on the opening

8    papers.  What I would do, if defendants are amenable to

9    this, is simply send them perhaps a new notice of motion and

10   a form of notice, because perhaps that has changed a tiny

11   bit in light of subsequent developments.

12         THE COURT:  Okay.

13         MS. SPANIER:  And I can incorporate the language

14   they proposed the last time we did this exercise.  And I can

15   have that to them by the middle of next week.

16         THE COURT:  All right, we'll say December 17th.

17         Now, in fairness to the defendants, we are right

18   on the heels of the holiday at that point.  How long would

19   you like to have to put in opposition?

20         MR. MARKS:  I think we could probably do it -- I'm

21   looking at my associate -- January 14th.

22         THE COURT:  All right.

23         MR. COLEMAN:  We can as well, Judge.

24         THE COURT:  Good.

25         And do you want to reply by January 24th?  Too

1    tight?

2            MS. SPANIER:  Your Honor, if I could -- if I could

3    have until the 28th, that would really be helpful.

4            THE COURT:  You got it.

5            You know, these are pretty routine, ordinarily, so

6    rather than assume I'm going to have to write on it, why

7    don't we put on a conference date to argue it, and maybe we

8    can deal with it in an oral ruling and hammer out any

9    concerns about the notice at that time.  I'm just trying to

10   get my calendar open.

11           MR. MARKS:  I'm sorry, Your Honor, the phone cut

12   out a little bit.  We didn't hear that.

13           THE COURT:  Yeah, I turned away from it, I'm

14   sorry, because I'm trying to open my calendar to give you a

15   date to come in.  Would you like to come in on the motion at

16   4:00 on Wednesday, February 9th?

17           MS. SPANIER:  That sounds so far out in the future

18   that it sounds eminently doable.

19           THE COURT:  Well, it only gives me a week and a

20   half with the papers, so I don't think it's too far from

21   when it's fully submitted.  I don't think that's what you

22   meant by it, either.

23           MS. SPANIER:  4:00 p.m. that day?

24           THE COURT:  On the 9th?  Yeah.

25           Is there anybody that finds that difficult?

```
1          MR. MARKS:  No, Your Honor.

2          MR. COLEMAN:  No, Your Honor, that's fine.

3          THE COURT:  All right.  And come to me with a

4  discovery plan by that date as well, and we'll put a

5  discovery schedule in place, all right?

6          MR. MARKS:  Your Honor --

7          MS. SPANIER:  Your Honor, as part of the discovery

8  plan, in connection with your original order setting a

9  discovery conference, plaintiffs served their initial

10 disclosures.  Do you anticipate defendants will be serving

11 their initial disclosures when we come to you on -- or that

12 they will have served them by the time we come to you on

13 February 9th?

14         THE COURT:  Is there any reason why you shouldn't

15 that you haven't already raised?

16         MR. MARKS:  Yes, Your Honor.  We haven't answered

17 the complaint.  We've moved to dismiss numerous claims.  We

18 have no idea what the ultimate claims are going to be, and I

19 really think that discovery beyond any type of discovery on

20 the 216(b) claims, which are against Amerivents, is

21 premature at this time.

22         THE COURT:  There's no FLSA claim against your

23 client?

24         MR. MARKS:  We claim that we're not a joindered

25 party, so the answer would be no, but Amerivents is going to
```

1    pay that regardless.  They were certainly not our employees;

2    we have no records on their employment.

3         MS. SPANIER:  Your Honor, we beg to differ on the

4    plaintiffs' side.  And, Your Honor, frankly, the same

5    argument that I made with regard to why the FLSA group of

6    plaintiffs are going to be harmed by the passage of time

7    affects the Rule 23 class because the Rule 23 class goes

8    back in this case to 2004.  And, again, people move, they go

9    away.

10        THE COURT:  Yeah.  Well, let's do this:  Let's

11   gather identification -- and I'm directing this to the

12   defendants.  Let's gather the identification information

13   about who worked, figure out what kind of time keeping

14   systems there were, and figure out who the management people

15   were who oversaw these folks.

16        MR. MARKS:  I don't believe we have the right

17   employers in this case for that -- to find that information.

18        THE COURT:  Well, then that's what you can say --

19   if you didn't have any employment relationship and you don't

20   have any records concerning the hours that these people

21   worked and nobody who worked for you knows where they

22   reported or what they did, then that's what you can say in

23   your response.

24        MR. COLEMAN:  Your Honor --

25        THE COURT:  But -- let me finish, please.

1          MR. COLEMAN:  I'm sorry.

2          THE COURT:  So we'll gather the information about

3    who worked during the statutory period, we'll find out what

4    information we have about their last-known addresses.  But

5    rather than pull the specific time records or start digging

6    out old files or restoring backup tapes, you'll just put a

7    litigation hold on all of that, as I'm confident you must

8    have already done, and be in a position to describe what

9    material exists, and then we'll figure out what we do about

10   that.

11         Go ahead, sir.

12         MR. COLEMAN:  Jerome Coleman.  I was just going to

13   reiterate what Mr. Marks indicated.  There's no answer in

14   the case and -- in this case thus far, and we do have the

15   motion to dismiss.

16         THE COURT:  Right.

17         MR. COLEMAN:  I don't see why there's any

18   breakneck movement to move forward with discovery, which may

19   be totally counterproductive, time consuming and costly.

20         THE COURT:  Yeah.  Well, if I grant the motion,

21   who are we going to send the notice to?

22         MR. CARTAFALSA:  If you grant the motion -- you're

23   talking about the 216(b) employment.

24         THE COURT:  Right.

25         MR. CARTAFALSA:  That's very different than the

1    four years or three years that precede that, which

2    Amerivents was not involved with and are other employers who

3    are not currently in this litigation.

4              MR. COLEMAN:  Your Honor, I think that -- I'm

5    pretty confident that plaintiffs have been in touch with the

6    majority, if not with the vast majority of the employees who

7    worked as suite attendants for the two-week period over the

8    last three years, and --

9              MR. CARTAFALSA:  They're all listed -- they're all

10   listed in the Department of Labor findings.

11             MS. SPANIER:  You know, I would just -- you're

12   wrong; we have not been in touch with the vast majority of

13   anyone.

14             THE COURT:  I'm not looking to make unnecessary

15   double work.  If your clients are in a position to confirm

16   that all of the individuals and their last-known addresses

17   are reflected in the Department of Labor audits and you turn

18   those audits over to the plaintiffs' counsel, then you'll be

19   satisfying them.

20             I also want them to know, generically and

21   descriptively, what kind of time keeping records are

22   available for the different time periods.  And that's all

23   going to have to come out in class certification discovery

24   anyway, so we may as well get working on it.

25             MR. CARTAFALSA:  If there is such a class

1    certification.

2            THE COURT:  If there is, if there is.  Can you

3    point me to where in the Federal Rules a Rule 12 motion

4    automatically stays discovery?

5            MR. CARTAFALSA:  No, we can't, Your Honor.

6            THE COURT:  Okay, then let's --

7            MR. CARTAFALSA:  We're not suggesting that.

8    We're just --

9            THE COURT:  Then let's go ahead with this.

10            MR. CARTAFALSA:  We're just suggesting what's

11    practical and what's appropriate under the circumstances of

12    whether, based on mere allegations, a defendant should be

13    scurrying back six years through records it doesn't have, to

14    determine -- because maybe there might be a case, whether

15    that's a prudent exercise of expenditure of funds.

16            THE COURT:  Well, if I --

17            MR. CARTAFALSA:  And I don't understand the

18    prejudice of what's going to happen, just because people may

19    move.  If those documents exist now -- and you're correct,

20    of course, Your Honor, we did send litigation hold letters.

21    If those documents exist now and those people exist now,

22    because one or two might move in the next year doesn't seem

23    to me to be the type of prejudice that should require this

24    expenditure.

25            THE COURT:  I understand your argument.  I just

1    don't agree with it.

2              MR. CARTAFALSA:  Okay.

3              THE COURT:  If I accepted it, it would be

4    tantamount to saying, in every case, Rule 12 motions

5    automatically stay discovery.  I don't see anything about

6    this case that distinguishes it from any other run-of-the-

7    mill case.  So we'll proceed as I've suggested and I'll see

8    you on February 9th, and we'll figure out where we go from

9    there.  Have a good afternoon.

10             MS. SPANIER:  Thank you, Your Honor.

11             MR. CARTAFALSA:  Your Honor --

12             THE COURT:  Yes.

13             MR. CARTAFALSA:  I'm sorry, just for

14   clarification, on the discovery issue, the certification is

15   looking for the 2007, 8 and 9 U.S. Open, okay?  When you're

16   asking -- and I understand what you're asking us to produce

17   in terms of discovery or to have available.  Are you asking

18   us to do that for the 2007, 8 and 9 or for the period of

19   time where other allegations are made in the case that's not

20   subject to the certification at this point, going back to I

21   guess --

22             THE COURT:  I'm asking you to gather the

23   information about where the records are and what they're

24   going to show -- excuse me, where the records are and what

25   they generically contain and consist of and how they can be

1   retrieved for the earlier period as well, because I don't

2   want to have people restoring backup tapes or going to

3   warehouses through disorganized paper files, if there's a

4   viable Rule 12 motion.  That would be the kind of showing of

5   prejudice that I would contemplate.

6           But if all of these files from the Rule 23 New

7   York Minimum Wage Act period are in a file cabinet in your

8   client's office, organized alphabetically or chronologically

9   or in an easy way to find, then I don't understand what the

10  big deal is with giving plaintiffs access to them now and

11  litigating the class action aspect of the case promptly.

12          MR. CARTAFALSA:  Well, Your Honor, respectfully,

13  here is what the complication is:  Amerivents was on the

14  scene in 2008 -- I'm sorry, 2007, 8 and 9, okay?  There is

15  another employer who was on the scene in 2005 and 2006 or

16  two other employers that were effectively similar, for the

17  purposes of this discussion, to Amerivents.

18          There's then separately the Levy Restaurants that

19  in the complaint are accused of doing separately and

20  different things, and then also draw in generically as a

21  joint employer.  So if this were one employer, I would agree

22  with your argument.  But because there are really multiple

23  employers here from multiple years, I think what you're

24  asking for very much applies to Amerivents for 2007, 8 and

25  9.  And I don't want to make Levy Restaurants' argument for

1   them; I'll leave that to Drew.  But that's the distinction,

2   Your Honor.

3           THE COURT:  I'm just not understanding why the

4   number of parties involved changes the analysis.  Can you

5   explain that to me?

6           MR. CARTAFALSA:  I'm not suggesting that it's

7   merely the number of parties.  What I'm suggesting is with

8   the class certification issue, it goes to Amerivents and it

9   goes to 2007, 8 and 9.  And I do think, to pick up --

10          THE COURT:  I'm confused now.  I thought that the

11  2007, 8 and 9 years would be covered by 216(b).

12          MS. SPANIER:  They are.

13          THE COURT:  So you're not seeking a Rule 23 class

14  of 7, 8, 9 plaintiffs, are you?

15          MS. SPANIER:  Your Honor, we have state law claims

16  as to which the class would be from the 2004 U.S. Open

17  through the 2009 Open, because the state law claims have a

18  longer statute of limitations.

19          THE COURT:  Right.  What I typically see is a

20  216(b) for 7, 8 and 9 and a 23 for 4, 5, 6.

21          MS. SPANIER:  There are broader claims that would

22  encompass the whole six years, that are different --

23          THE COURT:  So if Amerivents was only involved in

24  7, 8, 9, what would be the difference in the information

25  that would be turned over under 216(b) and under Rule 23?

1          MS. SPANIER:  None that I can see.

2          MR. CARTAFALSA:  And nothing from the point of

3   Amerivents.  As I said, I don't want to make Levy's

4   arguments for them --

5          THE COURT:  Okay.

6          MR. CARTAFALSA:  -- but that's what the

7   distinction was.

8          THE COURT:  Well, okay, but I still don't

9   understand how that's pertinent to the logic of moving

10  forward now.

11         MR. MARKS:  Well, one of the things I think Joe

12  was trying to raise is that for 2004, we have an entity,

13  Restaurant Associates is the company, that is not involved

14  in 2000 -- anything within the 216(b) period, and it would

15  allege that it has no jurisdiction over that entity with

16  respect to this litigation.  I don't think it rises out of

17  common nucleus of operative facts and I don't think it's a

18  related entity.  So I do believe that without any testing of

19  jurisdiction, which is subject to the motion to dismiss,

20  you're ordering an entity to provide discovery that wouldn't

21  necessarily be before the Court.

22         THE COURT:  All I'm asking it to do is tell us how

23  -- what records it has, how they're stored and how they can

24  be accessed.

25         MR. MARKS:  Okay, I understand that.

1          THE COURT:  And I don't think that's so

2   burdensome.  And I'm going to need to know that as I make

3   decisions about whether to order the discovery while the

4   motion practice goes forward anyway.  So by February 9th, I

5   think you can get that kind of information without a great

6   deal of difficulty.  And even if you're right, given

7   plaintiffs' counsel's enthusiasm for this litigation, you'll

8   find yourself defendants in state court and you'll already

9   have a leg up.

10          I'll see you on February 9th.

11          MS. SPANIER:  Thank you, Your Honor.

12                  * * * * * * * * *

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18      I certify that the foregoing is a correct transcript

19  from the electronic sound recording of the proceedings in

20  the above-entitled matter.

21

22

23

24

25  ELIZABETH BARRON                    December 22, 2010