UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL B. YAHRAES, KYLE HANAGARNE AND ELLIE HANAGARNE, on behalf of themselves and all others similarly situated,<br><br>         Plaintiffs,<br><br> - against -<br><br>RESTAURANT ASSOCIATES EVENTS CORP., RA TENNIS CORPORATION, LEVY RESTAURANTS, INC., AMERIVENTS, SCOTT FRAIN, JAMES DELLA PACE and JKDELLA SALES DIMENSIONS, INC.,<br><br>         Defendants. | Civil Action No.<br>CV 10-0935 (MKB) (SMG) |

**DECLARATION OF ORIN KURTZ IN SUPPORT OF PLAINTIFFS' MOTION FOR AN ORDER FINALLY APPROVING SETTLEMENT, FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND FOR SERVICE AWARDS TO PLAINTIFFS**

I, Orin Kurtz, declare under penalty of perjury:

  1.  I am an attorney admitted to practice in the courts of the state of New York and the United Stated District Court for the Eastern District of New York. I am an associate of the law firm of Abbey Spanier Rodd & Abrams, LLP. Together with the Law Offices of Mitchell Schley, LLC, Abbey Spanier is referred to herein as "Plaintiffs' Counsel."

  2.  I submit this declaration in support of Plaintiffs' motion for an order (1) finally approving the proposed settlement (the "Proposed Settlement") in the amount of $600,000 between Plaintiffs, on behalf of the Settlement Class (also referred to as the "Suite

Attendants")[1] and Defendants Restaurant Associates Events Corp., RA Tennis Corp. ("Restaurant Associates"), Levy Restaurants, Inc. ("Levy", together with Restaurant Associates, the "RA Defendants"), Amerivents, Scott Frain, James Della Pace, and JKDella Sales Dimensions, Inc. (the "Amerivents Defendants"); (2) certifying the Class for settlement purposes only; (3) granting the application by Plaintiffs' Counsel for an award of attorneys' fees in the amount of $155,000, which is approximately 26% of the Settlement Amount, and reimbursement of expenses in the amount of $28,222.75; and (4) granting service awards to Plaintiffs for their representation of the class in the amount of $2,000 per Plaintiff. My firm has directly participated in and/or overseen all aspects of this litigation, and I am fully familiar with the facts and circumstances herein.

3. On March 3, 2010, Plaintiffs filed this action on their own behalf and on behalf of all Suite Attendants who were employed by Defendants at the U.S. Open from the years 2004-2009. Plaintiffs brought claims for failure to pay overtime pursuant to the federal Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §201, *et. seq.*, failure to pay overtime pursuant to the New York Labor Law ("NYLL"), unlawful retention of gratuities pursuant to NYLL Section 196-d ("Section 196-d"), spread of hours pay under the NYLL, unlawful deductions under the NYLL, and unjust enrichment. Plaintiffs' FLSA claims were brought as a collective action pursuant to 29 U.S.C. § 216(b), on behalf all Suite Attendants who were employed by

---

[1] The Settlement Class is defined in the Preliminary Approval Order as "[a]ll persons who worked as Luxury Suite Attendants at the Arthur Ashe Stadium at the National Tennis Center immediately prior to and during any of the 2004-2009 U.S. Opens, and who do not timely opt out of this Settlement."

Excluded from the Class are the named defendants, any corporations, partnerships or other entities affiliated with them, any persons related by blood or marriage to the named defendants, and any person who timely submits a valid request to be excluded from the Settlement. Preliminary Approval Order at ¶1.

Defendants at the 2007-2009 U.S. Opens. Plaintiffs' NYLL claims were brought as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class of all Suite Attendants who were employed by Defendants at the U.S. Opens from 2004-2009. Approximately 70 Suite Attendants opted-in to this Action by filing a Consent to Become Party Plaintiff ("Opt-in Plaintiffs").

4. I respectfully submit that the $600,000 Proposed Settlement, which was reached after approximately two years of litigation, and after two arms' length mediation sessions with the Honorable Steven M. Gold, is an excellent result for Plaintiffs and the Class. As explained below, this case presented significant challenges from its inception, including but not limited to contentions by the Defendants that Plaintiffs' overtime claims for the years 2007-2009 were "100%" resolved by a settlement entered into between the Amerivents Defendants and the New York State Department of Labor. Although Plaintiffs had strong arguments to counter this obstacle and the others identified below, the Proposed Settlement herein avoids the risk presented by Defendants' arguments.

5. It appears the members of the Settlement Class share the belief that the Proposed Settlement is satisfactory. The Notice of Proposed Settlement of Lawsuit, which was approved by this Court on October 17, 2012 and, as amended, on November 7, 2012, advised the Settlement Class that the cut-off date to object to the Proposed Settlement, Plaintiffs' Counsel's application for attorneys' fees and expenses, and Plaintiffs' application for service awards, or to exclude themselves from the Class, was December 20, 2012. That deadline has passed and no Class member has filed an objection or requested exclusion from the Class.

6. For all the reasons herein, and for those stated in the accompanying memorandum of law, Plaintiffs respectfully request that the Court grant Plaintiffs' motion.

**PROCEDURAL HISTORY**

7. This action was filed on March 3, 2010. Dkt. No. 1. On April 30, 2010, Plaintiffs filed the Amended Complaint, which is the current operative complaint. Dkt. No. 25. On May 24, 2010, Plaintiffs moved for conditional certification of Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b). Dkt. No. 34.

8. While Plaintiffs' Section 216(b) motion was pending, Defendants obtained a stay of this action based upon their advice to the Court of a purported settlement with the NYSDOL that Defendants claimed covered "100%" of what Plaintiffs were owed for overtime for the years 2007-2009. The Court stayed this action from June 16, 2010 through November 19, 2010. Plaintiffs strenuously opposed the stay of this action and sought reconsideration of the order granting the stay; Plaintiffs' motion for reconsideration was denied. Dkt. Nos. 69, 74. Once the stay was lifted, Defendants obtained permission to and moved to dismiss this action on the basis of the purported settlement and on several other bases.[2]

9. On December 17, 2010, Plaintiffs renewed their motion for conditional certification, which Defendants opposed, and on February 9, 2011, Magistrate Judge Gold granted Plaintiffs' motion, finding that the Suite Attendants were "similarly situated." Notice was sent to Class members with FLSA claims for the years 2007-2009, and nearly 70 FLSA plaintiffs joined this action. Thereafter, discovery commenced.

10. On August 27, 2011, Plaintiffs sought a pre-motion conference in connection with a proposed motion for leave to amend the complaint to add allegations, drop certain claims, and add Yippee, HMG, and their owners (collectively, the "Proposed Defendants"),

---

[2] These motions to dismiss, made on February 22, 2011 were fully briefed and filed on April 19, 2011. Judge Townes heard oral argument on January 10, 2012. By Order dated February 21, 2012, in light of the parties' consent to mediation, Judge Townes issued an order withdrawing, without prejudice, Defendants' motions to dismiss.

4

whom Defendants claimed were employers of the Suite Attendants in 2005 and 2006 and thus were necessary parties. Dkt. No. 165. The Court denied Plaintiffs' request with leave to renew after the Court decided the pending motions to dismiss. Dkt. No. 180.[3]

11. Plaintiffs moved for class certification on January 6, 2012. Dkt. No. 187. No briefing schedule was set by the Court on this motion.

12. On February 14, 2012, the parties advised Judge Gold, by letter, that they were prepared to proceed with mediation. The parties made mediation submissions to the Court and subsequently participated in two mediation sessions before Judge Gold held on April 18, 2012 and on May 18, 2012. At the second session, the parties agreed to the Proposed Settlement herein.

13. Plaintiffs filed their motion for preliminary approval of the Proposed Settlement, certification of the Settlement Class for settlement purposes only, and for permission to send notice of the Proposed Settlement to the Settlement Class on September 24, 2012. Dkt. Nos. 211-213.[4] On October 10, 2012, the Court granted Plaintiffs' motion. Dkt. No. 215. The Court's Preliminary Approval Order required that the notice be mailed and emailed to the Class members on or before October 25, 2012. This revised date for notice was established because the RA Defendants informed Plaintiffs' Counsel, after the Court granted preliminary approval, that the RA Defendants did not have contact information for Settlement

---

[3] Plaintiffs moved for reconsideration of this order due to a concern that the NYLL's six-year statute of limitations would run on the claims against the Proposed Defendants. Dkt. No. 182. After the parties consented to mediation, Judge Townes issued an order on February 21, 2012, withdrawing this motion without prejudice.

[4] In connection with the motion for preliminary approval, the parties filed a Notice, Consent, and Reference to a Magistrate Judge, by which the parties consented to have the Honorable Steven M. Gold conduct all proceedings and enter orders in connection with the motions for preliminary and final approval of the Proposed Settlement. Dkt. No. 214.

5

Class members who worked in 2004. Thus Plaintiffs' Counsel served a subpoena on the Proposed Defendants, whom the RA Defendants claimed hired the Settlement Class members in 2004. The Proposed Defendants responded to the subpoena, stating that they no longer had the contact information for those who worked in 2004.

14. Consequently, Plaintiffs filed a motion to amend the Preliminary Approval Order. Plaintiffs requested that the Court permit Plaintiffs to (1) search for and contact the 2004 Settlement Class members by social media websites including Facebook, Twitter, LinkedIn and Monster.com; and (2) create a Facebook page containing the same information that was posted on the website created by the Notice and Settlement Administrator, www.usopensettlement.com. The Court granted the first part of Plaintiffs' motion and denied the second part. Dkt. Nos. 217, 219. On October 25, 2012, Plaintiffs submitted a proposed amended preliminary order; the Court approved and entered the amended preliminary order on November 7, 2012. Notice was sent to the Settlement Class as detailed in the accompanying Declaration of Josephine Bravata ("Bravata Decl.," filed concurrently), dated January 3, 2013,[5] and also as detailed in this Declaration.

**THE SETTLEMENT AND THE NOTICE SATISFY ALL REQUIREMENTS**

A.  **The Proposed Settlement is Fair and Reasonable**

15. In settlement of all claims in this action, Defendants agreed to pay $600,000 to the Settlement Class. None of the Settlement Amount will revert to the Defendants. If finally approved, the Proposed Settlement will resolve all claims asserted in this Action.

---

[5] Josephine Bravata is the Quality Assurance Manager of Strategic Claims Services, the Court-appointed Notice and Settlement Administrator. Bravata Decl. ¶2; Preliminary Approval Order ¶8.

6

16. This settlement is an excellent result and avoids the substantial risks Plaintiffs faced in this action. For example, the Amerivents Defendants entered into a settlement with the New York State Department of Labor (the "NYSDOL Settlement"), shortly after this action was filed, which the Defendants claimed covered "100%" of what the Suite Attendants were owed for overtime for the years 2007-2009; the purported settlement did not address Plaintiffs' claims for unlawful retention of gratuities, overtime for the years 2004-2006, or spread of hours pay. Although Plaintiffs had strong arguments to counter the Defendants' assertion that the NYSDOL Settlement covered "100%" of the overtime damages for the years 2007-2009, Plaintiffs were aware of the risk that the Court could accept Defendants' argument, thus resulting in the dismissal of a substantial portion of Plaintiffs' claims. Moreover, Defendants moved to dismiss Plaintiffs' claims for lack of subject matter jurisdiction, a motion that may have succeeded if the Court dismissed Plaintiffs' 2007-2009 FLSA overtime claims, which were the only federal claims in this action.

17. With regard to Plaintiffs' claims aside from overtime—Plaintiffs' Section 196-d claim and "spread of hours" claim—Defendants advanced arguments which, if accepted by the Court at summary judgment or a jury at trial, could have resulted in a total loss on those claims. On the Section 196-d claim, Plaintiffs alleged that Defendants added a "21% service charge" to suite customers' bills and failed to inform the customers that the service charge was not paid to the Suite Attendants. However, in discovery, the RA Defendants produced credit card Pre-Authorization Forms that were purportedly given to each customer in advance of the Open and stated that the 21% Service Charge "is taxable, as it is not a gratuity, but a back-of-house charge to cover overhead expenses[.]" Plaintiffs argued that this disclosure was

7

inadequate because it used highly cryptic jargon that was likely to confuse the "reasonable patron," whose understanding is the focus of Section 196-d.

18. Defendants also argued, and cited cases holding, that a spread of hours claim only covers minimum-wage earners and thus the Suite Attendants, who earned more than minimum wage, did not have a claim. Although Plaintiffs countered by showing that some courts in this Circuit had held that spread of hours claims are not limited to minimum-wage employees, the risk existed that the Court could accept Defendants' argument.

19. Plaintiffs faced additional risks in establishing liability for their overtime claims, a risk due in part to Defendants' inaccurate record keeping. For the years 2004-2006, the RA Defendants did not produce any records of the hours the Suite Attendants worked. For 2007-2009, the time records kept by the Amerivents Defendants were inadequate to the point that the Amerivents Defendants were fined by the NYSDOL for failure to keep adequate records. Similarly, the RA Defendants did not provide documentation showing the hours worked by the Suite Attendants. Where a defendant fails to keep time records, governing Supreme Court precedent permits a plaintiff to prove his or her hours worked by reasonable inference, shifting the burden to the defendant to refute the inference, which Plaintiffs intended to do in this action. However, there was no guarantee that a jury would accept Plaintiffs' testimony concerning their hours worked if the case were tried.

20. Still further, Plaintiffs faced the risk that their claims for the years 2004-2006 could be dismissed for failure to join the Proposed Defendants. In 2011, the Amerivents Defendants advised Plaintiffs' Counsel by letter of their contention that non-parties Yip*eee, HMG, and their owners (collectively, the "Proposed Defendants"), were employers of the Suite Attendants in 2005 and 2006 and thus were necessary parties. Thus, on August 27, 2011,

8

Plaintiffs requested a pre-motion conference in order to amend the Complaint to add certain parties whom Defendants asserted were "necessary parties." That request was denied by Judge Townes, without prejudice, by order dated November 7, 2011. Plaintiffs moved for reconsideration of this Order on November 21, 2011, explaining in their motion that the statute of limitations was about to run on the claims against the Proposed Defendants for the year 2005. In order to avoid these claims expiring, Plaintiffs filed an action against the Proposed Defendants in New York Supreme Court on or about November 8, 2011. Plaintiffs dismissed the state court action in order to achieve finality in this action, but only after confirming that the Proposed Defendants had recently filed for bankruptcy and were without any assets to satisfy a judgment. Although Plaintiffs did not agree that the Proposed Defendants were necessary parties, their absence in this action presented the possibility that the claims for 2004-2006 could have been dismissed.

21. With regard to damages, the risks were many. Because of the NYSDOL Settlement, damages would be reduced by the amount paid out for the 2007-2009 overtime claims. For the Section 196-d claims, Plaintiffs and the Settlement Class were not the only employees serving suite customers; for example, suite runners assisted in food service. If the Court or a jury determined that the suite runners or some other group of employees deserved some or all of the 21% service charge added onto customers' bills, the Suite Attendants' damages may have been substantially reduced.

22. Additionally, as is common in an employment class action, the Amerivents Defendants attempted to pick off the plaintiffs through a Rule 68 offer of judgment. On November 23, 2011, the Amerivents Defendants offered all of the opt-in plaintiffs—and expressly excluded any Rule 23 class member who worked in the years 2007-2009—the

combined amount of $136,000. Although this Rule 68 offer did not include any consideration for the Rule 23 Class members, it included a provision whereby the claims of the Rule 23 Class members would be released. Plaintiffs did not accept this offer. The $600,000 Proposed Settlement represents a superior result for all Suite Attendants, whether opt-in plaintiffs or Rule 23 Class members, and covers all years rather than the three-year period addressed by the Amerivents Defendants' Rule 68 offer.

23. It appears that the Amerivents Defendants could not have withstood a greater judgment than that secured by the Proposed Settlement. In connection with the NYSDOL Settlement, the Amerivents Defendants told the NYSDOL that they may face bankruptcy if they were required to pay too much in the NYSDOL Settlement, and the possibility existed that a similar assertion could be made in this action. The RA Defendants, however, are each multi-million dollar companies that are owned by Compass Group, USA and Compass Group plc; the RA Defendants could withstand a greater judgment.

**B.  The Notice Program Satisfies the Requirements of Rule 23 and Due Process**

24. In the Preliminary Approval Order, the Court approved the parties' proposal of mailing a notice to all Settlement Class Members who can be identified with reasonable effort (the "Mailed Notice"), and sending the same notice by E-mail to the Settlement Class Members for whom Plaintiffs could obtain email addresses (the "Summary Notice").[6] Preliminary Approval Order at ¶¶7, 9. The Court also approved posting the Notice on a website, www.usopensettlement.com. Furthermore, for Settlement Class members who worked in 2004—a year for which the RA Defendants provided the names of Settlement Class members and no contact information whatsoever—the Court permitted Plaintiffs to locate Settlement

---

[6]  The Notice, in final form, is submitted as Exhibit A to the Bravata Declaration.

Class members through various social media including Facebook, Twitter, LinkedIn, and Monster.com. Preliminary Approval Order at ¶¶7, 9.

25. The original notice program as set forth in the Stipulation provided that notice to the Settlement Class be given by mailing and e-mailing a notice to all Settlement Class members who could be identified with reasonable effort (the "Notice"), substantially in the form and content of Exhibit A to the Stipulation. The Notice described the terms of the Settlement Agreement and Class members' rights and options with respect to it. The Notice also explained clearly and precisely who is a member of the Settlement Class, how to participate in the Proposed Settlement, how to object to the Proposed Settlement, how to opt out of the Proposed Settlement, and the consequences of each of these options.[7]

26. However, after the Court preliminarily approved the notice program, the RA Defendants informed Plaintiffs' Counsel that they did not have any contact information for Settlement Class members who worked in the year 2004. The RA Defendants provided only a list of names without any contact information or social security numbers.

27. Plaintiffs' Counsel devised several methods to remedy this situation. In addition to conferring with counsel for the RA Defendants, Plaintiffs' Counsel also contacted and served a subpoena upon counsel for the Proposed Defendants who, through Yip*eee, Inc., hired some or all of the Settlement Class members who worked in 2004. The Proposed Defendants' response to the subpoena stated that the Proposed Defendants did not have contact information (or social security numbers, which can be used to locate some people) for those

---

[7] Aside from posting of the settlement-related documents on the internet by the Notice and Settlement Administrator (Stipulation ¶44), there was no publication of notice in any printed or online media. Plaintiffs' Counsel determined that there is no single publication or group of publications that Class Members would be likely to read and thus publishing notice of the settlement would be impracticable. This determination was approved by the Court as part of the preliminary approval process.

11

Settlement Class members who worked in 2004. According to the Proposed Defendants, those Settlement Class members were employed by Yip*eee, which had been dissolved.

28. Accordingly, Plaintiffs' Counsel, with the Court's approval, developed an addition to the notice program in order to locate and contact Settlement Class members who worked in the year 2004 through social media websites including Facebook, Twitter, and Monster.com. Through these sites, as well as through Google, our firm searched for each person listed as a Settlement Class member for the year 2004 whose name was provided by the RA Defendants.

29. The list provided by the RA Defendants showed that 80 Settlement Class worked in the year 2004. Our firm searched for each of these Settlement Class members through Facebook, Twitter, and Monster.com, LinkedIn, and on Google, and contacted any person who had the same name and could have plausibly been a Settlement Class member.

30. Of those whom we contacted, seven confirmed they are members of the Settlement Class. In addition, ten Settlement Class members who worked in the years 2005-2007—including Plaintiff Yahraes—also worked in 2004 and thus contact information was available for those Settlement Class members.

31. In addition to my firm's efforts to contact Settlement Class members from the year 2004, Strategic Claims, the Court-appointed Notice and Notice and Settlement Administrator sent notice to the Settlement Class members, as outlined in the Declaration of Josephine Bravata, Quality Assurance Manager of Strategic Claims Services.

32. Plaintiffs respectfully submit that the notice program effectuated per the Stipulation and Preliminary Approval Order meets the due process requirements of Rule 23 of

the Federal Rules of Civil Procedure which calls for the "best notice practicable under the circumstances."

33. As of this date, not a single Class member has objected to the Proposed Settlement, the application for attorneys' fees and expenses, or Plaintiffs' application for service awards. Accordingly, it appears the members of the Class share the view of Plaintiffs and Plaintiffs' Counsel that the Proposed Settlement is satisfactory.

34. Plaintiffs also respectfully submit that the Plan of Allocation of the Net Settlement Fund is fair and reasonable. Plaintiffs' Counsel have extensive experience in employment law and class action litigation, including employment class cases. In formulating the Plan of Allocation, Plaintiffs' Counsel weighed the relative strength of each claim in this action, took into account the risks in connection with each claim, including payments received from the NYSDOL Settlement, and took into account the damages available for each claim, including the amount, if any, of liquidated damages available. The resume of Abbey Spanier is annexed hereto as Exhibit B, and the resume of the Law Offices of Mitchell Schley is annexed hereto as Exhibit C.

**Plaintiffs' Counsels' Application for Attorneys' Fees and Expenses Should be Granted.**

35. The Notice informed the Settlement Class that Plaintiffs' Counsel would seek attorneys' fees up to $155,000, and expenses in an amount not to exceed $30,000. No Settlement Class member has objected.

36. I respectfully submit that the attorneys' fees and expenses sought by Plaintiffs' Counsel are reasonable.

37. Plaintiffs' Counsel devoted a combined 1,145 hours to this case. Abbey Spanier devoted 1,017 hours, all of which are attributable to my time. Abbey Spanier has not

13

submitted the time of any of the paralegals who worked on the case or any other attorneys. Judith L. Spanier, of Abbey Spanier, supervised my work on the case and spoke at court hearings, devoting approximately 200 hours to this case; she does not seek compensation for her time. Mitchell Schley, of the Law Offices of Mitchell Schley, devoted 128 hours to this case.

38. Annexed hereto as Exhibit A is a summary of Abbey Spanier's expenses, which amount to $28,222.75. These expenses were necessary to the prosecution of this action, and these same kinds of expenses have been approved frequently by other courts for class actions that Abbey Spanier has settled. The Law Offices of Mitchell Schley does not seek reimbursement for any out-of-pocket costs in connection with this action.

39. Plaintiffs' Counsel undertook this action without any certainty that they would be compensated for their work or reimbursed for their expenses incurred in the prosecution of this action. Rather, Plaintiffs' Counsel understood that, if no recovery were obtained for the Settlement Class, then counsel would not be compensated for their work or reimbursed for their expenses. Although the case was filed on March 3, 2010, Plaintiffs' Counsel performed substantial pre-complaint investigatory work before that date. Plaintiffs' Counsel met with the named plaintiffs on multiple occasions and, with their help, met with other Settlement Class members who provided information and corroborated Plaintiffs' accounts of the events relevant to the case. Before filing the complaint, Plaintiffs' Counsel also researched the status of the NYSDOL's investigation of the Amerivents Defendants and reviewed a large number of documents provided by Plaintiffs.

40. The day after this action was filed, news media outlets throughout the country reported on the case. Due to this publicity, our firm received dozens of calls from Suite

Attendants who expressed interest in the case. 27 of these Settlement Class members opted in to the FLSA claims in this action, pursuant to 29 U.S.C. §216(b), in the period between the filing of the complaint and the Court's February 9, 2011 order permitting Plaintiffs to send notice to the FLSA class members. For each Suite Attendant who opted in, Plaintiffs' Counsel spent several hours advising them of their obligations as plaintiffs, ensuring they complied with their obligations to preserve evidence, and answering their questions by phone and email.

41. On April 30, 2010, Plaintiffs' Counsel filed an amended complaint, which remained the operative complaint through the remainder of the case. At this still-early phase of the case, we prepared a motion pursuant to 29 U.S.C. §216(b) and requested permission from Judge Townes to file that motion immediately because, in an FLSA case like this one, the statue of limitations continues to run for each individual opt-in plaintiff until he or she files a FLSA consent form with the Court.

42. Our Section 216(b) motion was filed on May 24, 2012. However, after this motion was fully briefed, Judge Townes stayed this case for nearly five months based on Defendants' representation that the NYSDOL Settlement fully resolved Plaintiffs' 2007-2009 FLSA claims. After Judge Townes issued this stay, Plaintiffs filed a motion for reconsideration of the order granting a stay.

43. After Judge Townes lifted the stay, Plaintiffs renewed their Section 216(b) motion. Although Defendants had previously filed responses to the motion that did not oppose it but only took issue with the language of Plaintiffs' proposed notice, Defendants reversed course and filed full oppositions to the motion. Plaintiffs believed these oppositions were without merit—indeed, at the February 9, 2011 oral argument on the motion the Court stated that one defendant's argument amounted to an assertion that "the minimum wage and overtime

15

laws don't merit enforcement" which was "not appropriately within the confines of this motion argument"—yet, nonetheless, we drafted a full reply brief, argued the motion, and the next day, submitted a letter request to toll the statute of limitations because the Defendants would not agree to allow tolling.

44. Plaintiffs' Counsel sent out an FLSA notice on or about February 18, 2011. In response to that notice, approximately 40 Suite Attendants opted in to this action. Plaintiffs' Counsel spent several hours counseling each opt-in plaintiff on his or her responsibilities as a plaintiff, and assisting them in document gathering and preservation, and later with their discovery responses.

45. Also, after Judge Townes lifted the stay, on February 22, 2011, Defendants moved to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6). Although Rule 12(b)(6) allows motions directed toward the complaint and allows reference to documents that are incorporated into the complaint, Defendants argued that the NYSDOL Settlement—which was nowhere mentioned in the complaint—required dismissal of Plaintiffs' 2007-2009. However, despite their early representations to Judge Townes that they would supply more information on the NYSDOL Settlement, Defendants provided nothing other than statements in their briefs about the NYSDOL Settlement. Plaintiffs opposed Defendants' motions and, after Defendants submitted additional evidence on their replies, Plaintiffs moved to strike portions of the replies. Judge Townes held oral argument on the motions to dismiss on January 10, 2012, but terminated the motions without prejudice, when the parties informed the Court they would participate in a mediation.

46. In March, 2011, the parties commenced discovery. Plaintiffs served a single set of document requests and interrogatories on Defendants. On March 18, 2011, the RA

Defendants served separate, identical document requests and interrogatories on each of the approximately 70 opt-in plaintiffs who had joined the case as of that date. Plaintiffs' Counsel, and three paralegals from Abbey Spanier's office, contacted each of the 70 opt-in plaintiffs, counseled them by telephone or in person, and served written discovery responses and documents for all of the opt-in plaintiffs who responded to Defendants' discovery requests. On May 19, 2011, the Amerivents Defendants served a separate set of document requests on the three named Plaintiffs only.

47. In response to Plaintiffs' document requests, Defendants produced thousands of pages of documents from June through December, 2011. Plaintiffs' Counsel reviewed those documents, and conferred with Defendants' attorneys to obtain additional documents that Plaintiffs' Counsel maintained were relevant. Plaintiffs also issued a subpoena to the United States Tennis Association and received and reviewed documents from the USTA, and received documents concerning the NYSDOL Settlement and the investigation leading thereto pursuant to a New York Freedom of Information Law ("FOIL") request.

48. On August 27, 2011, Plaintiffs sought a pre-motion conference in connection with a proposed motion for leave to amend the complaint to add allegations, drop certain claims, and add Yippee, HMG, and their owners (collectively, the "Proposed Defendants"), whom Defendants claimed were employers of the Suite Attendants in 2005 and 2006 and thus were necessary parties. Dkt. No. 165. The Court denied Plaintiffs' request with leave to renew after the Court decided the pending motions to dismiss. Dkt. No. 180. Plaintiffs moved for reconsideration of this Order on November 21, 2011, explaining in their motion that the statute of limitations was about to run on the claims against the Proposed Defendants for the year 2005. In order to avoid these claims expiring, Plaintiffs filed an action against the

17

Proposed Defendants in New York Supreme Court on or about November 8, 2011. Plaintiffs dismissed the state court action after the Proposed Defendants informed Plaintiffs that they had recently filed for bankruptcy and were without any assets to satisfy a judgment. Although Plaintiffs did not agree that the Proposed Defendants were necessary parties, their absence in this action presented the possibility that the claims for 2004-2006 could have been dismissed.

49. Beginning in November, 2011 and continuing through January 31, 2012, the parties took depositions. Plaintiffs' Counsel prepared Plaintiffs and defended their depositions. Plaintiffs' Counsel also deposed the following individuals: Levy employee Eric Lindberg, who was individually noticed and also appeared as Levy's 30(b)(6) witness concerning a wide variety of topics; Levy employee Lorraine Vega; former Levy Employee Bill Wilson; and defendants Scott Frain and James DellaPace.

50. As depositions were ongoing, Plaintiffs' Counsel also prepared their motion for class certification, which was served on January 6, 2012.

51. In addition to the above matters, Plaintiffs' Counsel continued to interact with, advise, and update the opt-in plaintiffs who had timely joined the action. Beyond those who had timely joined, several Settlement Class members contacted Plaintiffs' counsel and filed FLSA consent forms well past the May 2, 2011 deadline for filing such claims. By letter motion dated November 3, 2011, Defendants requested that the Court strike these late-filing plaintiffs' FLSA consent forms. Dkt. No. 177. Plaintiffs' Counsel contacted each late-filing plaintiff and, for those plaintiffs who responded and had valid claims, successfully opposed Defendants' motion. January 19, 2012 Docket Order.

52. On February 14, 2012, the parties advised the Court, by letter, that they would submit to mediation before the Honorable Steven M. Gold. Plaintiffs' Counsel drafted an extensive mediation statement and took part in two arms' length mediations, each of which was attended by Plaintiff Daniel Yahraes. At the conclusion of the second mediation, the parties reached agreement on the essential terms of the Proposed Settlement.

C. **Plaintiffs' Request for Service Awards Should be Granted**

53. Plaintiffs Daniel Yahraes, Kyle Hanagarne, and Ellie Hanagarne request service awards of $2,000 each. No Settlement Class member has objected to these awards.

54. The Plaintiffs in this action satisfied their duties as Class Representatives. They provided Plaintiffs' Counsel with information that was essential to the prosecution of this action. Plaintiffs spent countless hours meeting in person and by phone with Plaintiffs' Counsel about the status of the case and providing information. Plaintiffs also helped Plaintiffs' Counsel coordinate with many of the opt-in plaintiffs. Plaintiff Yahraes produced over 1,000 pages of documents, many of which provided crucial information that Plaintiffs' Counsel would have used as evidence if the action went to trial. Plaintiff Yahraes was an active participant in this litigation throughout.

55. All Plaintiffs spent significant time on discovery-related tasks. Plaintiffs gathered documents, responded to Defendants' interrogatories, and sat for their depositions. Plaintiffs Kyle and Ellie Hanagarne traveled to New York City from their home in Utah to be deposed.

56. All Plaintiffs incurred risks from their participation in this action. Plaintiff Daniel Yahraes has continued to work for Defendants as a Suite Attendant at the U.S. Open and year-round as a catering service employee. Plaintiff Yahraes testified in his deposition that

Defendants had threatened retaliation against him for his actions in filing a complaint with the NYSDOL in 2005 concerning Restaurant Associates' failure to pay overtime at the US Open, and also submitted a declaration with Plaintiffs' mediation statement detailing an attempt at retaliation against him after this action was filed. Despite the threats of retaliation, Plaintiff Yahraes continued with this action.

57. Although Plaintiffs Kyle and Ellie Hanagarne no longer work for Defendants, they face the possibility of discrimination by future employers for their participation in this action.

Dated: New York, New York
January 3, 2013

\_\_s/Orin Kurtz_____
Orin Kurtz